S99A0482. BRYANT v. THE STATE.
(515 SE2d 836)

CARLEY, Justice.

A jury found Gearol Bryant guilty of felony murder while in the commission of both an aggravated assault and a theft by taking. The trial court entered its judgment of conviction on the jury verdict, and imposed a sentence of life imprisonment. The trial court denied Bryant's motion for a new trial, and he appeals.[1]

1. Bryant stole jewelry and a handgun from his cousin in Summerville. He pawned the jewelry and, armed with the gun, hitchhiked to Atlanta. Needing a place to stay, he arrived unannounced at the apartment of Dale Ryan, who was an acquaintance. Ryan let him in, and offered him pizza and beer. At some point, Bryant shot Ryan, and then stole Ryan's car and fled to Alabama. When apprehended, Bryant initially denied any involvement in the homicide, claiming that he merely was present in Ryan's apartment when two other men broke in and committed the murder. However, there was no indication of a break-in at Ryan's apartment, and Bryant subsequently changed his story. In his new version of the events, Bryant admitted shooting Ryan, but contended that he did so accidentally and then fled in Ryan's car after panicking. However, this claim was inconsis-

---

[1] The homicide occurred on March 16, 1995, and the grand jury indicted Bryant on May 5, 1995. The jury returned its guilty verdict on March 28, 1997 and, on April 1, 1997, the trial court entered the judgment of conviction and life sentence. On April 28, 1997, Bryant filed his motion for new trial and, on September 24, 1998, the trial court denied that motion. On October 15, 1998, Bryant filed his notice of appeal, and the case was docketed in this Court on December 28, 1998. Bryant submitted his appeal for decision on February 15, 1999.

tent with the circumstantial evidence indicating that the homicide was perpetrated methodically, and was not an accidental occurrence. Ryan's body was not randomly situated, as might be expected in the case of an accidental shooting after which the perpetrator fled in panic. When discovered, Ryan's body was lying on his mattress and gave the initial appearance that Ryan died from natural causes while sleeping. It was not until the medical examiner subsequently discovered a gunshot wound in the back of Ryan's head that it became apparent that a homicide had been committed. At trial, Bryant continued to maintain that he shot the victim accidentally, and he also alluded to the possibility that, after he passed out from drinking beer, Ryan may have committed a homosexual assault on him. Construing the evidence most strongly in favor of the verdict, it was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of his guilt of felony murder while in the commission of an aggravated assault upon Ryan and the theft by taking of Ryan's property. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bryant enumerates as error the admission of evidence that he stole the jewelry and gun from his relative in Summerville. The admissibility of this evidence was challenged in the context of Bryant's pre-trial motion in limine, which the trial court denied. Thus, Bryant has preserved the issue for review, even though he did not object when the evidence was proffered during the course of the trial. *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285 (1) (260 SE2d 20) (1979).

When he stole the items, Bryant left a note for his cousin indicating that he intended to leave for Atlanta, which he did after pawning the jewelry. Shortly after arriving in Atlanta, Bryant shot Ryan and stole Ryan's car. Although the State was unable to present direct evidence that the weapon used to shoot Ryan was the one which Bryant stole in Summerville, there was circumstantial evidence of that fact, in that the caliber of both guns was the same and there was only a relatively short interval between the theft of the gun and the homicide in Atlanta. Considering the totality of the circumstances, Bryant's commission of the earlier theft "was clearly relevant . . . to show where the murder weapon came from." *Fleming v. State*, 269 Ga. 245, 248 (7) (497 SE2d 211) (1998). See also *King v. State*, 230 Ga. 581, 582 (2) (198 SE2d 305) (1973); *Hall v. State*, 163 Ga. App. 515, 517 (5) (295 SE2d 194) (1982). Compare *Carter v. State*, 261 Ga. 344, 345 (3) (404 SE2d 432) (1991).

3. The trial court refused to allow an expert to testify that, in his opinion, Bryant suffered from a post-traumatic stress disorder stemming from childhood sexual abuse. Bryant enumerates this evidentiary ruling as error, contending that the excluded testimony was rel-

evant to whether his shooting of Ryan was a justifiable homicide. As defense counsel conceded in the trial court, however, the expert's opinion testimony was "not really going as to a justification defense in this case." Indeed, the testimony could not be admissible for that purpose, since Bryant did not contend that he had a history of being sexually abused by Ryan himself. If Bryant was asserting self-defense, he could show other specific acts of violence committed against him and others by Ryan. See *Chandler v. State*, 261 Ga. 402, 407 (3) (c) (405 SE2d 669) (1991). He could not, however, support that defense by the proffer of any evidence based upon the commission of extraneous acts of abuse upon him by anyone other than Ryan. "It would be difficult, if not impossible, for the [S]tate to rebut, refute or test as to credibility, evidence of abuse by third parties." *Clenney v. State*, 256 Ga. 123, 124-125 (3) (344 SE2d 216) (1986).

Because Bryant did not assert the defense of delusional compulsion as defined in OCGA § 16-3-3, we need not address the admissibility of the evidence in support thereof. Bryant's mental state resulting from his childhood sexual abuse would have no bearing on whether the gun discharged "by misfortune or accident" and in the absence of any "criminal scheme or undertaking, intention or criminal negligence." OCGA § 16-2-2. Thus, the expert's testimony was not relevant to Bryant's defense of accident. Insofar as the lesser offense of voluntary manslaughter is concerned, the trial court did not preclude Bryant from pursuing the topic of Ryan's alleged sexual assault as provocation for the shooting. Bryant's guilt of voluntary manslaughter was dependent upon whether the jury believed that he had been sexually assaulted by Ryan and, if so, whether a sufficient cooling-off period elapsed between that assault and the shooting. OCGA § 16-5-2 (a). As it elucidated neither issue, the trial court properly excluded the opinion of the expert that Bryant suffered from a post-traumatic stress disorder arising from childhood sexual abuse by others. See *Lewandowski v. State*, 267 Ga. 831, 832 (2) (483 SE2d 582) (1997).

4. In connection with its charge on voluntary manslaughter, the trial court included an instruction which tracked the language of OCGA § 16-5-2 (a). On appeal, Bryant urges that this instruction is unconstitutionally burden-shifting, in that it requires the jury to find a defendant guilty of murder if it determines that a sufficient cooling-off period intervened between the provocation and the homicide.

The record demonstrates that Bryant requested the trial court to charge on the entirety of OCGA § 16-5-2 (a). An appellant is estopped to urge error in the giving of a charge which he requested. *Roulain v. Martin*, 266 Ga. 353, 354 (2) (466 SE2d 837) (1996). Moreover, this Court has upheld an instruction which follows the language of OCGA § 16-5-2 (a) against the contention that it unconstitutionally shifts

the burden of proof from the State to the defendant. *Barron v. State,* 261 Ga. 814, 815 (3) (411 SE2d 494) (1992); *White v. State,* 255 Ga. 731, 733 (4) (342 SE2d 304) (1986). Thus, the trial court did not err by giving that charge in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 17, 1999.

*Zell & Zell, Rodney S. Zell,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Frank A. Ilardi, Assistant Attorney General,* for appellee.