## S00A1022. BECK v. THE STATE.
### (535 SE2d 756)

SEARS, Justice.

The appellant, Steve Lee Beck, was convicted of the murder of Donnie Jones, of the aggravated assault of Ben Lawson, of the aggravated assault of Gene Cline, of three counts of the possession of a firearm during the commission of a crime, and of simple battery.[1] On appeal, Beck contends, among other things, that the trial court erred in refusing to permit an expert employed by Beck to testify; in refusing to give Beck's requested charge on voluntary manslaughter; and in permitting the State to introduce evidence of prior difficulties. For the reasons that follow, we conclude that these contentions are without merit, and we therefore affirm Beck's convictions.

1. The evidence would have authorized the jury to find that Beck's supervisor at the plant at which he worked requested Beck to work overtime to cover for an excused co-worker on the mornings of November 17 and November 18, 1994. Beck told his supervisor that he would not do so, and Beck's supervisor told the victim, Donnie Jones, who was the production superintendent for the plant, of Beck's refusal. Sometime before November 17, Jones talked to Beck, telling him that if he refused to work overtime on the two mornings in question, Beck faced the prospect of being fired. On the morning of November 17, Beck in fact refused to work overtime, and when Beck left the plant that morning, he told a co-worker that if he got fired he

---

[1] The crimes occurred on November 18, 1994. Beck was indicted on March 13, 1995. Following a jury trial, Beck was found guilty on March 31, 1995. That same day, the trial court sentenced Beck to life in prison for murder; to five years in prison on the first possession count, to be served consecutively to the life sentence for murder; to twenty years in prison for the aggravated assault of Lawson, to be served consecutively to the sentence on the first possession count; to five years in prison on the second possession count, to be served consecutively to the sentence for the aggravated assault of Lawson; to twenty years in prison for the aggravated assault of Cline, to be served concurrently to the sentence for the aggravated assault of Lawson; to five years in prison for the third possession offense, to be served concurrently to the sentence on the second possession offense; and to twelve months in prison for the simple battery conviction, to be served concurrently to the sentences for second and third possession offenses. On April 19, 1995, Beck filed a motion for new trial. The court reporter certified the trial transcript on January 1, 1996. On February 10, 2000, Beck amended his motion for new trial, and on February 11, 2000, the trial court denied Beck's motion for new trial, as amended. On February 17, 2000, Beck filed a notice of appeal, and on March 7, 2000, the appeal was docketed in this Court. On May 1, 2000, the appeal was submitted for decision on briefs.

was going to "bust" the victim's nose. On November 18, Beck brought a gun to work. When Jones saw Beck arrive at the plant, Jones approached Beck and asked Beck to come into Jones's office. Jones had asked Gene Cline, a plant foreman, and Ben Lawson, a shift supervisor, to witness the termination of Beck, and Cline and Lawson were in Jones's office when Jones and Beck arrived there. According to Cline and Lawson, Jones informed Beck that he was fired for insubordination. Jones also told Beck that he had his last check and separation papers, and that if Beck went to the union, he might be able to get his job back. Beck did not say anything in response, and Jones then reached out to give the check and separation papers to Beck. When he did so, Beck punched Jones in the forehead. According to Cline and Lawson, Jones staggered back, Beck advanced on him, and Jones scuffled with Beck, trying to push him away from him. No further blows occurred, and Jones asked Cline to get Beck off of him. Cline testified that he told Beck that there was "no use in [fighting]," and that Beck then backed away from Jones. When Beck did so, Jones told Ben Lawson to call the sheriff and get Beck off the company's property. Jones then stated that he would make the phone call himself, at which point Beck pulled out his gun and shot the victim three times. Cline testified that other than telling Beck that he was fired, Jones did not say anything to provoke Beck. In this regard, Beck also testified that Jones was not threatening to Beck when Jones approached him that night about firing him.

The medical examiner testified that Jones had been shot twice in the chest and once in the head behind the right ear. According to the medical examiner, there was gunpowder stippling around the wound to the head, but not around the two chest wounds. The State's firearms expert testified that the type of gun used by Beck would produce gunpowder stippling if fired from a distance of six to ten inches.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Beck guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Beck first contends that the trial court erred in refusing to permit his expert to testify regarding Beck's mental condition at the time he was fired, as that evidence, according to Beck, was critical to help the jury understand that the work-related stresses weighing on Beck caused him to perceive provocation in the act of firing him and to act with passion in shooting Jones. In this regard, Beck also contends that the trial court's ruling denied him a fair trial. We have, however, specifically rejected this type of expert testimony, ruling

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

that, with regard to voluntary manslaughter, "the question is whether the defendant acted out of passion resulting from provocation sufficient to excite such passion in a reasonable person. It is of no moment whether the provocation was sufficient to excite the deadly passion in the particular defendant."[3] Accordingly, we conclude that the trial court properly excluded the testimony in question, and that the trial court's ruling did not deny Beck a fair trial.

3. Beck also contends that the trial court erred in refusing to give his requested charge on voluntary manslaughter. We disagree. The record shows that Jones simply informed Beck that he was fired because of his conduct, and that Jones engaged in no provocative conduct toward Beck. More specifically, we note that there is no evidence that Jones was rude, harsh, or disrespectful to Beck when he approached Beck about firing him or when he actually informed him that he was fired. Moreover, after Beck hit Jones, Jones only attempted to push Beck away from him and end the altercation and merely stated that he would call the police to escort Beck off the company's property. In the latter regard, we have held repeatedly that, when a victim is attacked by a defendant and the victim attempts to defend himself or end the altercation, the victim's actions in doing so cannot provide the serious provocation necessary to justify a charge on voluntary manslaughter.[4] Under the circumstances of this case, we cannot conclude that there was even slight evidence of the serious provocation necessary to warrant a charge on voluntary manslaughter. Accordingly, we conclude that the trial court did not err in refusing to give Beck's requested charge.

4. Beck contends that the trial court erred in permitting the State to introduce evidence of two prior incidents at work regarding disciplinary conflicts with his supervisors. Contrary to Beck's contention, we conclude that the evidence of prior difficulties was admissible to show Beck's bent of mind and attitude toward his supervisors and to help explain why he was fired.[5]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 10, 2000.

*Tony L. Axam*, for appellant.
*Roger G. Queen, District Attorney, Thurbert E. Baker, Attorney*

---

[3] *Lewandowski v. State*, 267 Ga. 831, 832 (2) (483 SE2d 582) (1997). Accord *Bryant v. State*, 271 Ga. 99, 101 (515 SE2d 836) (1999).

[4] *Turpin v. Christenson*, 269 Ga. 226, 233-234, n. 6 (497 SE2d 216) (1998); *Beam v. State*, 265 Ga. 853, 857-858 (463 SE2d 347) (1995); *Carmichael v. State*, 260 Ga. 792, 793 (399 SE2d 918) (1991); *Horton v. State*, 249 Ga. 871 (1) (295 SE2d 281) (1982).

[5] See *Mallory v. State*, 271 Ga. 150, 153-154 (517 SE2d 780) (1999).

*General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General*, for appellee.