S13A0572. RYANS v. THE STATE.
(744 SE2d 759)

NAHMIAS, Justice.

Appellant Vernon Ryans was indicted along with Sandy Washington, Jeremy Williams, and Andre Madison for malice murder, felony murder, and possession of a firearm during the commission of a crime relating to the shooting of Jeffrey Ellison. Appellant was separately indicted for possession of a firearm by a convicted felon,

but that charge was later nolle prossed. Appellant was tried separately, with Madison testifying against him, and the jury found him guilty on the three remaining charges. He appeals, arguing that the trial court erred in allowing an officer to testify about prior consistent statements that Madison had made and in denying his motion for mistrial after his character was allegedly placed into issue improperly. For the reasons that follow, we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. Shortly after 6:00 p.m. on January 5, 2006, Zannie Worrell was watching television in his home along with Ellison when he heard numerous gunshots being fired at his house. Worrell was not hit, but Ellison, who was sitting on a sofa, was shot in the back of the neck. Worrell called 911, and police officers responded within minutes. Worrell's house and car, which was parked on the grass in front of the house, had numerous bullet holes in them. Ellison later died from the gunshot wound.

Timothy Fitzgerald was driving down the street on which Worrell lived to do some work at another house. When he pulled to the side of the street to check an address, a cream-colored Oldsmobile drove around him. Fitzgerald then pulled into the driveway of the house where he was scheduled to work. A short time later, he heard multiple gunshots. He could see the brake lights of a car stopped in front of a house, and the shots were being fired from the car.

On the afternoon of the shooting, Thomas Bush was at Appellant's aunt's house. He saw Appellant, Washington, Williams, and Madison leave the house in Williams's car, with Williams driving, Madison in the seat behind him, Appellant in the front passenger seat, and Washington in the seat behind him. Washington had a .380-caliber handgun, and another handgun was on the front seat between Williams and Appellant. When the four men returned to the house some time later, they were all sitting in the same seats as when they left.

According to co-defendant Madison, whose own trial was still pending when he testified, at around 4:00 p.m. that afternoon, he was at the home of Appellant's aunt with Appellant, Washington, and

---

[1] The crimes occurred on January 5, 2006, and Appellant and his co-defendants were indicted by a Richmond County grand jury on January 17, 2006. The jury found Appellant guilty on March 16, 2007. On March 20, Appellant was sentenced to life in prison for malice murder and five consecutive years for the firearm offense; his felony murder conviction was vacated by operation of law. On April 16, 2007, Appellant filed a motion for new trial, which the trial court denied on August 31, 2012. Appellant then filed a timely notice of appeal. The appeal was docketed to the January 2013 term of this Court and submitted for decision on the briefs. We previously affirmed Washington's convictions from his separate trial; his appeal did not raise the issues raised here. See *Washington v. State*, 286 Ga. 153 (686 SE2d 119) (2009).

Williams. Williams said that he had heard that Zannie Worrell had put a hit on Appellant and Washington. Appellant said he needed $5,000, and Washington said he needed money too. Appellant and Washington wanted to rob a man named Rico. The group then left in Williams's car, a beige Oldsmobile, to go to Rico's house. Williams was driving, with Madison sitting behind him; Appellant was in the front passenger seat, with Washington sitting behind him. They first stopped at a convenience store, where videotape from the store's security camera showed Williams getting out of the driver's seat and Appellant getting out of the front passenger seat. They then went to Rico's house, where Williams and Washington got out of the car and Williams tried but failed to break into the house with a screwdriver.

After Williams and Washington got back into the car, Appellant said "something got to shake. I need some money." Appellant suggested that they rob Worrell, and the group drove to his house. When they saw cars in the yard, they decided not to rob Worrell, but Appellant said he would "shoot that b---- up" for putting a hit on him. Washington had a .380-caliber handgun, while Appellant had a nine-millimeter handgun; they started shooting toward Worrell's car. Madison testified that he did not have a gun and that he and Williams did not participate in the shooting.

After the shooting, Williams drove everyone back to Appellant's aunt's house; Williams and Washington then left to run errands. Appellant and Madison went to visit some friends, who told them that Ellison had been killed. The two men then drove to Appellant's grandmother's house in Jackson, South Carolina, where they were told that somebody had threatened to shoot them in retaliation for Ellison's death. Washington arrived there a short time later. At the request of Appellant's aunt or grandmother, a Jackson police officer went to the grandmother's house. Shortly thereafter, several Augusta, Georgia, officers arrived at the house, and Madison and his mother, Washington and his mother, and Appellant and his grandmother and aunt all went to the Augusta police station. Madison later showed an officer where Williams was living. Williams and his girlfriend were there; his girlfriend's car was a beige Oldsmobile Cutlass that Williams sometimes drove.

Seventeen shell casings were found at the crime scene. Six were fired from the same .380-caliber handgun and the other eleven from the same nine-millimeter handgun. A CCI-brand nine-millimeter shell casing was found in the Oldsmobile and several nine-millimeter shell casings of that brand were found at the crime scene. The victim was killed by a .380-caliber bullet. The guns used in the shooting were not recovered.

When Appellant first spoke with the police, he denied any knowledge of the shooting and claimed that he was in South Carolina with Madison all that day. After Appellant was told of statements by Madison that conflicted with that story, Appellant admitted that he was in the front passenger seat of the Oldsmobile when the shooting occurred but claimed that Washington did all the shooting. When told that two guns were involved, Appellant said that Washington must have fired both of them.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to a crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that the trial court erred in allowing an officer to testify about statements that co-defendant Andre Madison made to the officer after the crimes, which were consistent with Madison's trial testimony. We see no error.

During cross-examination of Madison, Appellant implied that his testimony on direct examination was recently fabricated. For example, Madison testified on direct examination that Williams had attempted to break into Rico's house with a screwdriver, but Appellant got Madison to admit on cross-examination that he had not said this to an officer when interviewed shortly after the crimes. Similarly, Madison testified that he had not seen a gun before Appellant and Washington began firing, but when confronted on cross-examination, Madison admitted that he had told an officer before trial that he had seen a gun while at Appellant's aunt's house that afternoon. Because Appellant implied that Madison had fabricated portions of his testimony at trial, the State was properly allowed to rehabilitate his testimony by introducing consistent statements that Madison made to the officer prior to the alleged fabrication. See *Kidd v. State*, 292 Ga. 259, 260 (736 SE2d 377) (2013) (holding that a witness's prior consistent statements were properly admitted because the defendant's cross-examination implied that the witness's trial testimony was recently fabricated and the witness was present at trial and available for cross-examination). See also *Williams v. State*, 292 Ga. 844, 850 (742 SE2d 445) (2013) (explaining that a witness's veracity may be affirmatively attacked by questions on cross-examination

"eliciting inconsistencies between his testimony at trial and his previous statement," even if the witness is not directly accused of lying).[2]

3. At trial, Madison testified that on the day of the shooting, he and the other co-defendants wanted to rob someone in Augusta because Appellant and Washington needed some money. Madison did not specify why Appellant needed money, but the officer who later testified about Madison's pre-trial statements recounted that Madison had said that Appellant needed money to pay Appellant's probation officer $5,000. Appellant objected and moved for a mistrial on the ground that his character had been placed into issue improperly; the trial court sustained the objection but denied the motion. Appellant contends this was error, but we disagree.

Evidence that is otherwise relevant and admissible to show a defendant's motive for committing a crime is not rendered inadmissible because it incidentally places his character in issue. See, e.g., *Griffin v. State*, 292 Ga. 321, 323 (737 SE2d 682) (2013) (holding that evidence that the defendant was angry with the victim because the victim had failed to pay the defendant for drugs was admissible to show motive for the crimes, even though it incidentally placed the defendant's character in issue); *Thornton v. State*, 292 Ga. 87, 88 (734 SE2d 393) (2012) (holding that evidence of the defendant's "prior illegal drug use and drug dealing was properly admitted to show his motive to rob a home where he believed illegal drugs and money would be found" and was not rendered inadmissible because it incidentally put his character in issue). In this case, evidence that Appellant needed to pay $5,000 to his probation officer (as opposed to simply wanting some money) was relevant to establish his strong motive for committing a robbery, which is what led Appellant and his co-defendants to Worrell's house (after trying to rob Rico's house). Thus, the trial court was generous in sustaining Appellant's objection, and the court did not abuse its discretion in denying his motion for mistrial. " 'Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial.' " *Childs v. State*, 287 Ga. 488, 492 (696 SE2d 670) (2010) (citation omitted).

*Judgment affirmed. All the Justices concur.*

---

[2] We note that under Georgia's new Evidence Code, which does not apply to this case because Appellant was tried before January 1, 2013, see Ga. L. 2011, pp. 99, 214, § 101, the admissibility of prior consistent statements by trial witnesses is governed by OCGA §§ 24-6-613 (c) and 24-8-801 (d) (1) (A).

DECIDED JUNE 17, 2013.

Long D. Vo, for appellant.

Ashley Wright, District Attorney, Henry W. Syms, Jr., Madonna M. Little, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General, for appellee.