FINAL COPY
294 Ga. 379

S13A1327.  O'CONNELL v. THE STATE.

THOMPSON, Chief Justice.

Appellant Catherine O'Connell was sentenced to life in prison for the malice murder of her adoptive mother.[1]  She appeals, contending the trial court erred by denying her Batson[2] challenge and granting a motion in limine to bar hearsay evidence of abuse she allegedly suffered in Guatemala.  Finding no error, we affirm.

1. Viewing the evidence in the light most favorable to the verdict, we find the following:  The victim adopted appellant from a Guatemalan orphanage when appellant was eleven years old.  A few years later, the victim adopted a

---

[1]  The crimes occurred on August 6, 2006.  A Gwinnett County grand jury subsequently indicted appellant on charges of malice murder, felony murder, and aggravated assault. Trial commenced on September 29, 2008 and ended on October 24.  After the jury found appellant guilty on all counts, the court sentenced her to life in prison for malice murder. The remaining charges were merged under Malcolm v. State, 263 Ga. 369, 371-374 (434 SE2d 479) (1993). Appellant filed a motion for new trial on October 30, 2008 which she subsequently amended on April 10, 2012. After a hearing on May 21, 2012, the court denied the motion by order dated June 26, 2012. Appellant filed a notice of appeal on July 2, 2012. The case was docketed in this Court to the September 2013 term and submitted for decision on the briefs.

[2]  Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

second daughter, Brenda, from the same orphanage. Brenda and appellant quickly formed a strong bond with one another, but their respective relationships with the victim began to deteriorate. Over time, the two girls developed substantial behavioral issues. After a number of confrontations with both Brenda and appellant, the victim began to fear for her life.

On the night of the murder, the victim's daughters went to a neighbor's house and knocked on the door. The neighbor testified that Brenda had a cloth tied around her neck and was gasping for air, but noted that these actions appeared to be staged. After appellant contended her mother tried to choke Brenda, the neighbor went to the victim's house and found the victim dead on the bathroom floor with a butcher knife in her hand. When police arrived, both appellant and Brenda gave statements alleging the victim attacked Brenda with a knife. According to the girls, appellant came to Brenda's rescue by grabbing the victim around the neck and causing her to faint.

Although Brenda initially denied staging the crime scene, she eventually admitted to police that she placed the knife in the victim's hand after she was dead. In addition, a medical examiner evaluated both girls and was unable to find injuries to substantiate their claims of self-defense. Brenda did not have

2

injuries consistent with strangulation and appellant had only superficial scrapes that were possibly self-inflicted. An autopsy of the victim revealed she sustained multiple head injuries while she was still alive, but the medical examiner determined the cause of death to be strangulation.

We find the evidence adduced at trial sufficient to enable a rational trier of fact to reject appellant's justification defense and find her guilty beyond a reasonable doubt of malice murder. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred in denying her Batson challenge to the State's striking venire panelist Shealeise Weaver. Weaver, a full-time college student, chose not to be excused as a potential juror on the basis of her student status.[3] Concerned about Weaver's apparent eagerness to serve on the jury, the State moved to have Weaver excused for cause. Initially, appellant's counsel joined in that motion. When the motion was denied, the State used a peremptory strike to remove Weaver from the panel.

Under Batson, the opponent of a peremptory challenge must make a prima

___

[3] OCGA § 15-12-1.1 (a) (2).

3

facie showing of racial discrimination. Batson, supra, 476 U. S. at 93-94; Stacey v. State, 292 Ga. 838, 841 (741 SE2d 881) (2013). The burden then shifts to the State to offer a race-neutral reason for the strike. Toomer v. State, 292 Ga. 49, 54 (734 SE2d 333) (2012). Finally, the trial court must determine if the opponent of the strike has proven discriminatory intent. Stacey, supra, 292 Ga. at 841. The trial court's ultimate finding in this regard is entitled to great deference on appeal. Toomer, supra, 292 Ga. at 58.

Here, the trial court found appellant established a prima facie case of discrimination because the State struck four of the six black venirepersons, including Weaver. In response, the State offered two reasons for striking Weaver. First, the State expressed concern that Weaver appeared to be "bucking to get on the jury."[4] Second, it was troubled by Weaver's young age. In that regard, the State pointed out that the youngest person selected to serve on the jury was some five or six years older than Weaver.

A peremptory strike based on a juror's demeanor during voir dire may be

---

[4] The trial judge found the State's explanation that Weaver was "bucking" to be on the jury persuasive, remarking that Weaver was the only potential juror that seemed to be campaigning for selection.

deemed to be race-neutral. <u>Toomer</u>, supra, 292 Ga. at 54. Furthermore, age can be a race-neutral reason for exercising a peremptory strike. <u>Burkett v. State</u>, 230 Ga. App. 676, 677 (497 SE2d 807) (1998). In light of the State's race-neutral reasons for striking Weaver, and giving great deference to the trial court's ultimate finding that appellant failed to prove discriminatory intent, see <u>Toomer</u>, supra, 292 Ga. at 58, we perceive no error in the denial of appellant's <u>Batson</u> challenge.

3. The trial court allowed two experts to opine that they had diagnosed appellant as suffering from post-traumatic stress disorder (PTSD) and battered person syndrome, but it did not allow them to testify with regard to specific abuses allegedly committed by others against appellant in Guatemala even though that evidence helped form the basis of the experts' opinions.[5] The excluded evidence consisted of statements made by appellant as well as a number of documents — including orphanage and adoption records — created in Guatemala.

---

[5] The trial judge allowed appellant's experts to give the broad categories of information used to diagnose appellant. However, her experts were not allowed to "go chapter and verse . . . about the stuff that happened in Guatemala."

Appellant argues the trial court erred in refusing to permit the experts to relate the details of appellant's traumatic childhood in Guatemala because it prevented the jury from giving due consideration to her justification defense. In this regard, appellant asserts the evidence was admissible to show (1) she had a reasonable belief in the victim's use of imminent, unlawful force against Brenda, see Smith v. State, 268 Ga. 196, 201 (486 SE2d 819) (1997), and (2) the specific acts of abuse underlying her experts' opinions. See Leonard v. State, 269 Ga. 867, 870-871 (506 SE2d 853) (1998). Compare Loper v. Drury, 211 Ga. App. 478, 481 (1) (b) (440 SE2d 32) (1993) ("Not even an expert can give an opinion based [entirely] upon reports which have been prepared by others and which are not in evidence.").

It is axiomatic that an appellate court will not reverse a decision admitting or refusing to admit evidence unless the trial court abused its discretion. See Wolfe v. State, 273 Ga. 670, 674 (544 SE2d 148) (2001). Because the evidence in question is not admissible to support appellant's justification defense, see Lewis v. State, 270 Ga. 891, 893 (515 SE2d 382) (1999), we find no abuse of discretion on the part of the trial court and no error.

6

The critical factor in a justification defense is whether a defendant acted with the fear of a reasonable person under the circumstances. Sedlak v. State, 275 Ga. 746, 748 (571 SE2d 721) (2002). Because justification is based on the fears of a *reasonable* person, the *subjective* fears of a particular defendant are irrelevant in the evaluation of this defense. Lewis, supra. For this reason, we have on numerous occasions found inadmissible to support a justification defense evidence of violent acts or abuse committed against a defendant by someone other than the victim. See Bryant v. State, 271 Ga. 99 (515 SE2d 836) (1999); Lewis, supra (violent acts committed by third persons against defendant are inadmissible in support of justification defense).

In Bryant, supra, the trial court refused to allow an expert to testify that the defendant suffered from PTSD stemming from childhood sexual abuse committed by someone other than the victim. On appeal, the defendant enumerated error upon that ruling, asserting the testimony was relevant to show his shooting of the victim was justifiable. We affirmed, expressly stating that a defendant cannot support his claim "by the proffer of any evidence based upon the commission of extraneous acts of abuse upon him by anyone other than [the

victim]." Id. at 101 (3). We did so partly because of the irrelevancy of this subjective evidence and partly because "[i]t would be difficult, if not impossible, for the State to rebut, refute or test as to credibility, evidence of abuse by third parties." Id. (citing Clenney v. State, 256 Ga. 123, 124-125 (3) (344 SE2d 216) (1986)).

Here, appellant sought to introduce evidence of acts committed against her in Guatemala by someone other than the victim in support of her justification defense. As in Bryant and the other cases cited above, this evidence was neither relevant nor admissible for the purpose it was offered and it was properly excluded by the trial court. That appellant's experts based their opinions, in part, on her statements to them regarding her childhood did not render this evidence admissible. Although a testifying expert can base his or her opinion in part on hearsay, an expert cannot be used as a conduit to introduce inadmissible hearsay evidence. See Cobb v. State, 283 Ga. 388 (658 SE2d 750) (2008); Leonard v. State, supra. See also Rogers v. State, 282 Ga. 659, 666 (7) (d) (653 SE2d 31) (2007).[6]

---

[6] As for cases tried on or after January 1, 2013, see OCGA § 24-7-703, which provides:

Even if it can be said the trial court erred in excluding the proffered evidence of childhood abuse, we would find no harm because appellant's experts were permitted to testify that she suffered from PTSD and battered person syndrome as a result of her childhood experiences in Guatemala. This testimony was sufficient to allow the jury to give full consideration to appellant's justification defense.

Judgment affirmed. All the Justices concur.

Decided January 21, 2014.

Murder. Gwinnett Superior Court. Before Judge T. Davis.

Mary Erickson, for appellant.

The facts or data in the particular proceeding upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, such facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Such facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.