296 Ga. 785

FINAL COPY

S14A1430. ALLEN v. THE STATE.

HINES, Presiding Justice.

Miles Jonathan Allen appeals from his convictions and sentences for malice murder, aggravated assault, kidnapping, and false imprisonment, all in connection with the death of Carlnell Walker. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Keith Roberts

---

[1] The crimes occurred between June 21, 2006 and July 8, 2006. On March 21, 2007, a Clayton County grand jury returned a 13-count indictment against Allen, as well as Keith Jerome Roberts, Theodore Paul Holliman, and Breylon Wendell Garland, charging the four men with: Count 1 - malice murder; Count 2 - felony murder while in the commission of burglary; Count 3 - felony murder while in the commission of armed robbery; Count 4 - felony murder while in the commission of kidnapping; Count 5 - aggravated assault with intent to murder; Count 6 - aggravated assault with intent to rob; Count 7 - aggravated assault with a knife; Count 8 - aggravated battery; Count 9 - kidnapping; Count 10 - false imprisonment; Count 11 - burglary with intent to commit aggravated assault; Count 12 - burglary with intent to commit theft; and Count 13 - armed robbery. Allen was tried alone before a jury August 24-28, 2009, and found guilty on all charges except Counts 8 and 13; an order of nolle prosequi was entered as to Count 8, and the jury returned a verdict of not guilty as to Count 13. On August 31, 2009, Allen was sentenced to life in prison on Count 1, a term of 20 years in prison on Count 6, a term of 10 years in prison on Count 7, life in prison on Count 9, a term of 10 years in prison on Count 10, and a term of 20 years in prison on Count 11; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Allen filed a motion for new trial on September 4, 2009, which he amended on August 19, 2010, and again on October 21, 2010. On May 30, 2012, the motion, as amended, was denied. Allen filed a notice of appeal on June 26, 2012, and the appeal was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

contacted Allen, as well as Breylon Garland and Theodore Holliman, about retaliating against Walker for disrespecting Roberts, and to get some money that Roberts believed Walker owed him. They went to Walker's home and broke in; Walker was not home, and Allen and Holliman waited for him while Roberts and Garland went to a store. Walker arrived: Allen struck him in the face, knocking him down, and Holliman bound him. When the other men returned, the four beat, stabbed, and tortured Walker; despite their demands, Walker said that he did not have the money that his attackers sought. The four then placed the bound and gagged Walker in the trunk of his car in the garage; he was still alive. Roberts and Holliman drove away, leaving Allen and Garland behind; shortly thereafter, Allen and Garland walked to a gas station to get a ride from a friend.

After Walker's mother had not heard from him in two weeks, a Clayton County police officer went to Walker's home on July 8, 2006, and found furniture upended, blood splatters on the walls, and Walker's decomposing body in the trunk of his car. Walker had been beaten, stabbed, bound, and placed in the trunk of the car. Allen's bloody palm print was recovered from Walker's hallway walls, and Allen's jeans were also found in the home, stained with

2

Walker's blood. Walker died of hyperthermia from being left in the car.

Holliman testified for the State at Allen's trial. In his own defense, Allen testified that he was at the crime scene and participated in the violence against Walker, but only because he feared Roberts, who, during the commission of the crimes, said "what's happening to [Walker] could happen to anybody in the room."

1. Allen contends that the evidence was insufficient to convict him of Count 3 of the indictment, felony murder while in the commission of armed robbery. However, Allen was sentenced for malice murder, and not for felony murder while in the commission of armed robbery, and any issue with regard to that count is now moot. See *Bostic v. State*, 294 Ga. 845, 847 (1) (757 SE2d 59) (2014). As for the remaining charges, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Allen was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Allen contends that the trial court failed to strike for cause a prospective juror who he claims was a United States Marshal with arrest powers. However, when he addressed the court regarding the prospective juror after the

3

jury was selected, he referred to the prospective juror as a "POST certified officer," and when the court corrected him, and noted that "he was actually a corrections officer I believe at the Federal Penitentiary," Allen responded: "That's right." The trial court correctly ruled that striking the challenged juror for cause was not required as "[a] corrections officer is not subject to an excusal for cause because he is not a sworn police officer with arrest powers. *Pace v. State*, 271 Ga. 829 (10) (524 SE2d 490) (1999)." *Prince v. State*, 277 Ga. 230, 235 (3) (587 SE2d 637) (2003). Although Allen now asserts that the State made an admission in judicio as to the prospective juror's status when it referred to him as a "U.S. Marshal," read in context, the reference was made as part of the prosecutor's recollection as to why the prospective juror had "signed some paper for federal but not state [sic]."[2] See *Morgan v. Howard*, 285 Ga. 512, 513 (3) (678 SE2d 882) (2009). No evidence of the prospective juror's status was presented either at trial, or on the motion for new trial, and Allen fails to show that the trial court erred in refusing to strike him for cause. See *Thornton v. State,* 264 Ga. 563 Ga. 63, 573 (13) (b) (449 SE2d 98) (1994).

---

[2] Juror voir dire was not recorded, and the reference to "paper" is not in the record before this Court.

3. After jury deliberations began, Allen moved for a mistrial, asserting that an article in the local newspaper showed that the chief prosecuting attorney had violated a gag order that the court had imposed; the article attributed statements to the prosecutor regarding Allen's motive. The order prohibited remarks concerning the defendant's guilt or innocence, and the evidence in the case, stating: "This Order may be enforced by the contempt powers of this Court." The State noted that a reporter for the newspaper had been present during trial, as had television reporters, and that the text of the article could have been produced from the evidence presented, and from the opening statements of the prosecutor. The court denied the motion for mistrial, ruling that there was no evidence that any juror had seen it, or other news media coverage, which would have violated the court's regular instructions to the jury. And, "'[i]t is presumed that jurors follow a trial court's instructions[.] [Cit.]'" *Nelms v. State*, 285 Ga. 718, 722 (3) (681 SE2d 141) (2009) The court also found that there was no evidence that the chief prosecutor had, in fact, violated the gag order; the court noted that the information that was in the article and ascribed to the chief prosecutor was the same as that which had been presented during the court proceedings. The trial court did not err in denying the motion for mistrial. Id.

5

4. The State introduced a video recording of Allen's interview with investigating detectives, which was played for the jury. During the interview, Allen said he had "smoked" with the victim sometime before the day of the crimes, and a detective responded that he "[didn't] care" about "smoking weed."[3] Allen contends that this constituted an improper comment on his character, and that the trial court should have granted his motion for a mistrial. See *Ryans v. State*, 293 Ga. 238, 242 (3) (744 SE2d 759) (2013). The court denied the motion and instructed the jury that anything in the detective's response represented only an assumption on his part, that there was no proof of Allen committing any marijuana offense, and that "any opinion or assumption of the detective in this regard" was to have no part in the jury's deliberations; the court further asked if any juror would not be able to follow these instructions, and there were no responses indicating that any juror would be so unable.

"Whether to grant a mistrial based on improper character evidence is within the discretion of the trial court. [Cit.] We have held that curative

---

[3] The exchange occurred during a portion of the interview in which Allen was being questioned as to whether he knew the victim.

6

instructions are an adequate remedy when a witness inadvertently refers to a defendant's prior convictions or criminal acts." *Bunnell v. State*, 292 Ga. 253, 257 (4) (735 SE2d 281) (2013). To the extent that the detective's comment suggested a criminal act on Allen's part, there was no error in denying the motion for mistrial based upon the incidental reference to Allen's character. See *Moore v. State*, 295 Ga. 709, 714 (3) (763 SE2d 670) (2014); *Roebuck v. State*, 277 Ga. 200, 205(5) (586 SE2d 651) (2003).

5. During the playing of the same video recording, Allen objected to a detective's comment to Allen that "you don't know who I've talked to . . . you don't know what those people told me," as well as the remark of a second detective that "somebody gave up your name," and the admonition that Allen should reveal his fellow actors as "your buddies have already dropped the name on you." Allen contends that the admission of the detectives' statements constituted a violation of his right to confront his accusers under the Sixth Amendment to the Constitution of the United States, i.e., that the statements of co-conspirators were placed before the jury without him having the opportunity to cross-examine the co-conspirators about the statements. However, the Sixth Amendment Confrontation Clause "does not bar the use of testimonial

statements for purposes other than establishing the truth of the matter asserted. [Cit.]" *Crawford v. Washington*, 541 U. S. 36, 59 (IV), n. 9 (124 SCt 1354, 158 LE2d 177) (2004). And, the detectives' statements were clearly not meant to establish as true that others had implicated Allen, but were simply a part of an interrogation technique. See *Rowe v. State*, 276 Ga. 800, 803 (2) (582 SE2d 119) (2003). See also *Jackson v. State*, 262 Ga. App. 451 (585 SE2d 745) (2003) (overruled on other grounds by *Carter v. State*, 266 Ga. App. 691, 693 (2) (598 SE2d 76) (2004)); *Huckeba v. State*, 217 Ga. App. 472, 477 (5) (458 SE2d 131) (1995). The detectives did not identify the "buddies" mentioned, and no substance of any supposed statements was placed before the jury by the detectives' reference. Compare *Yancey v. State*, 275 Ga. 550, 551-552 (2) (570 SE2d 269) (2002).

Allen also contends that these statements constituted violations of then-effective OCGA § 24-3-52, which provided, in toto, that "[t]he confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself." Assuming that this argument is preserved for

appellate review,[4] it has no merit. Again, no confession of a conspirator was admitted against Allen by virtue of the detectives' interrogation technique. Compare *O'Neill v. State*, 285 Ga. 125 (674 SE2d 302) (2009).

6. Outside the presence of the jury, Allen sought to exclude certain autopsy photographs, and the court noted that they would be admissible if they assisted the medical examiner in his testimony, and stated that the court would consider them on a "case by case basis." In the presence of the jury, when the State sought to have nine autopsy photographs admitted, the trial court stated: "Before I'm going to admit them over the defendant's objection I'm going to need for [the witness] to say that these will assist, whether they will or will not assist, in his testimony and explanation of the cause of death in this case [sic.]." Although he made no such objection at the time,[5] Allen now asserts that the court was improperly "coaching" the State and that such constituted a violation

---

[4] When objecting at trial, Allen did not cite any statutory basis for the objection, asserting only his rights under the Confrontation Clause, as set forth in *Crawford*, supra, and *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

[5] At trial, Allen objected to the admission of seven of the photographs as not being a fair depiction of the facts of the autopsy; the court admitted those seven photographs over objection, and the remaining two without objection.

9

of OCGA § 17-8-57.[6]  And, on such a ground, the failure to object at the time would be of no moment, as "we have clarified that a violation of OCGA § 17-8-57 will *always* constitute 'plain error,' meaning that the failure to object at trial will not waive the issue on appeal. [Cit.]" *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010) (Emphasis in orginal).  However, there is no such error here.

> Although we strongly discourage the giving of direction or the use of language that could create the appearance of alignment between the trial court and either the prosecution or defense, the trial court did not "express or intimate [its] opinion as to what has or has not been proved [so as to violate OCGA § 17-8-57].

Id. at 635.  The court's statement did not express or intimate such an opinion, but only repeated its earlier ruling, and Allen fails to show error in the admission of the autopsy photographs at issue.  Id.[7]

7.  The trial court permitted a crime scene investigator to testify as to his

---

[6] OCGA § 17-8-57 reads:
> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

[7] Contrary to Allen's contention in this Court, the record reveals no partiality of the sort that constituted error in *Johnson v. State,* 278 Ga. 344, 346-347 (2) (602 SE2d 623) (2004).

10

analysis of blood patterns, over Allen's objection that the witness was not sufficiently qualified to do so.[8]

> "To qualify as an expert . . . generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. [Cits.] Formal education in the subject at hand is not a prerequisite for expert status." [Cit.] The trial court has broad discretion in accepting or rejecting the qualifications of the expert, and its judgment will not be disturbed on appeal absent an abuse of discretion. [Cit.]

*Williams v. State*, 279 Ga. 731, 732 (2) (620 SE2d 816) (2005). The witness testified to his 18 years experience as a crime scene investigator, the considerable knowledge he had gained thereby, and about his studies over that time, which included blood pattern analysis. The trial court did not abuse its discretion in allowing the witness to testify as to blood pattern analysis. Id.

8. Allen attempted to introduce evidence through a psychiatrist who would have testified in support of Allen's defense of coercion that Allen is susceptible to being "led" into crime by another person to a greater extent than most people; the psychiatrist's report stated that Allen did not suffer from any major mental illness. The trial court granted the State's motion in limine on the basis that

---

[8] At the time of Allen's objection, the witness had already answered several questions on the subject of blood pattern analysis.

Allen had not complied with the criminal discovery statutes, see OCGA § 17-16-4, and that the proffered evidence was irrelevant to Allen's asserted defense of coercion. See OCGA § 16-3-26.[9] We need not determine if the trial court was correct to find a discovery violation.

> Evidence of a criminal defendant's mental disability may be presented in support of a defense of insanity or delusional compulsion (see OCGA §§ 16-3-2 and 16-3-3); a claim of incompetency to stand trial (see OCGA § 17-7-130); or, since such pleas were authorized, a plea of guilty but mentally ill or guilty but mentally retarded (see OCGA § 17-7-131) — none of which Appellant raised in this case. For more than 150 years, however, this Court has consistently upheld the exclusion of evidence of a defendant's diminished mental condition when offered to support other defenses or to negate the intent element of a crime. [Cits.]

*Thompson v. State*, 295 Ga. 96, 98-99 (2) (757 SE2d 846) (2014). The defense of coercion is predicated on the reasonable person standard, not the subjective situation of the defendant. See *O'Connell v. State*, 294 Ga. 379, 382 (3) (754 SE2d 29) (2014); *Harris v. State*, 279 Ga. 304, 308 (3) (c) (612 SE2d 789) (2005); *Bryant v. State*, 271 Ga. 99, 101 (3) (515 SE2d 836) (1999). The trial

---

[9] OCGA § 16-3-26 reads:
A person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury.

court did not err in determining that the proffered evidence was irrelevant.

9. Allen asserted the affirmative defense of coercion, and the court instructed the jury on the law thereof, using the language of OCGA § 16-3-26, stating that "[a] person is not guilty of a crime, except murder, if the [criminal] act" was coerced in the manner set forth in the statute. Allen now urges that the trial court should have specifically informed the jury that coercion could be a defense to the felonies that underlay the felony murder charges. See *Kelly v. State*, 266 Ga. 709, 711 (2) (469 SE2d 653) (1996). However, Allen "did not submit a request, written or otherwise, for such a charge, and thus there was no error in failing to give any such instruction. [Cits.]" *Lewis v. State*, 291 Ga. 273, 278 (4) (731 SE2d 51) (2012). Further, the trial court did not enter judgments of conviction and sentence as to those counts, and any issues concerning those jury instructions are moot. *Parker v. State*, 282 Ga. 897, 899 (4) (655 SE2d 582) (2008).

Allen also argues that, as to the malice and felony murder counts, the trial court should have instructed the jury on what he contends was his sole remaining defense, i.e., that which has been referred to as "the omnibus

justification defense of OCGA § 16-3-20 (6)."[10] *Gravitt v. State*, 279 Ga. 33, 34

(2) (608 SE2d 202) (2005). See *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513)

(1991). His argument is that he feared for the lives of his family at the hands of

Roberts if he did not do what Roberts wished, as well as his own life, and thus

there was "evidence of 'a threat of imminent death or great bodily injury to two

or more people, which [he could] avoid only by killing one innocent person . .

. .' [Cit.]" *Gravitt*, supra at 34. However, such a justification defense would not

fall under the omnibus provision of OCGA § 16-3-20 (6); under that provision,

the asserted defense must "stand upon the same footing of reason and justice as

those [defenses] enumerated" in Title 16, Article 2, of the Code. And, to the

extent that Allen claimed justification because of a threat to his family, such

---

[10] OCGA § 16-3-20 reads:
  The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed:
    (1) When the person's conduct is justified under Code Section 16-3-21, 16-3-23, 16-3-24, 16-3-25, or 16-3-26;
    (2) When the person's conduct is in reasonable fulfillment of his duties as a government officer or employee;
    (3) When the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis;
    (4) When the person's conduct is reasonable and is performed in the course of making a lawful arrest;
    (5) When the person's conduct is justified for any other reason under the laws of this state; or
    (6) In all other instances which stand upon the same footing of reason and justice as those enumerated in this article.

14

would not stand upon the same footing as the defenses so enumerated; the justification defenses enumerated in the Article that contemplate the use of force do so in the face of a current or imminent threat, see OCGA §§ 16-3-21; 16-3-23; 16-3-24; 16-3-26, and there is no evidence that Roberts was in a position to harm Allen's family when Allen committed his acts. As to any claim that Allen was himself under an immediate threat, it is identical to the claim that Allen was coerced by Roberts into killing Walker; as such a claim is explicitly removed from the coercion defense of OCGA § 16-3-26, the asserted defense clearly does not stand upon the same footing of reason and justice as the defense enumerated in OCGA § 16-3-26. The evidence did not support a charge under OCGA § 16-3-20 (6). *Gravitt*, supra at 35.

10. Finally, Allen claims that his trial counsel failed to provide effective representation in that counsel failed to persuade the trial court to strike for cause the prospective juror referred to in Division 2, supra. In order to prevail on a claim of ineffective assistance of counsel, Allen must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674)

15

(1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

As noted in Division 2, supra, no evidence was ever produced, either at trial, or during the hearing on the motion for new trial, that the prospective juror could have been struck for cause. Accordingly, Allen cannot show prejudice on this claim of ineffective assistance of trial counsel. *Geiger v. State*, 295 Ga. 648, 653-654 (5) (b) (763 SE2d 453) (2014).

Judgments affirmed. All the Justices concur.

16

Decided March 27, 2015.

Murder. Clayton Superior Court. Before Judge Benefield.

Stanley W. Schoolcraft III, John W. Kraus, for appellant.

Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christian A. Fuller, Assistant Attorney General, for appellee.