301 Ga. 397
FINAL COPY

S17A0176. DAVIS v. THE STATE.

Boggs, Justice.

Appellant Hunter Mason Davis was tried before a jury and found guilty of felony murder (two counts), armed robbery, aggravated assault, and possession of a firearm during the commission of a felony (two counts) in the shooting death of Angelo Larocca.[1] He now appeals, asserting multiple claims of error. For the following reasons, we affirm in part and vacate in part, and remand this case for resentencing.

1. Viewed in the light most favorable to the verdict, the evidence showed

---

[1] The crimes occurred in June 2011. On October 5, 2011, a Gwinnett County grand jury indicted Davis on charges of malice murder, felony murder (two counts), armed robbery, aggravated assault, and possession of a firearm or knife during the commission of a felony (two counts). Following a May 2013 jury trial, Davis was found guilty on all charges with the exception of the charge of malice murder which was nolle prossed before trial. He was sentenced to life in prison plus five years; the trial court merged the aggravated assault and armed robbery charges into the corresponding felony murder charges, erroneously sentenced Davis on both felony murder counts with the second count to be served concurrently with the first (see footnote 7 below), and merged one possession of a firearm during the commission of a felony charge into the other. Davis' motion for new trial was filed on May 28, 2013, amended by new counsel on August 4, 2014, and on August 6, 2014, and denied on December 18, 2015. His notice of appeal was filed on January 13, 2016. This case was docketed in this Court for the term beginning December 2016 and orally argued on January 24, 2017.

that Davis and his friend Brandon Mosley were often seen together at The Columns, an apartment complex in Gwinnett County where Mosley lived. On June 26, 2011, the victim, Larocca, and his girlfriend purchased Xanax pills from Davis after being introduced to him by Sierra Hounchell, a mutual acquaintance. Obtaining Davis' cell phone number from Thomas Cope, another friend, the victim made arrangements on June 28 to buy more Xanax from Davis. Davis thereafter contacted both Hounchell and Cope to ask if they knew whether the victim had anyone who might retaliate against him if he robbed the victim. Cope did not inform the victim of his conversations with Davis.

Shortly before 2:00 p.m. on June 28, 2011, the victim, his girlfriend and another couple — David Varvari and Madison Leftwich — drove to The Columns per directions the victim received via cell phone. Text messages and cell phone records showed numerous contacts between the victim and Davis between 12:15 and 1:39 p.m. on that day. As instructed, the victim went to an apartment behind building 1000 to purchase the drugs and, exiting the car, walked around the back of the building. Shortly thereafter, the victim called his girlfriend and, sounding scared, told her to hold the money out the car window. The girlfriend realized that something was wrong because the victim had taken

2

the money with him. She testified that as she hung up the phone, a man appeared at the driver's side window, demanding the money. After informing him she did not have the money, the individual walked away in the same direction the victim had taken. Hearing two gunshots, she and the other occupants of the car drove out of the complex, but returned shortly thereafter. Varvari exited the vehicle and ran in the direction taken by the victim, but was stopped by a security officer who had found the victim's body lying in the building stairwell. No money was found on the victim's body, but shell casings from a 9-millimeter gun and a cigarette butt with Davis' DNA were found next to it. According to the medical examiner, the victim died from a gunshot wound to the chest.

That same afternoon, Davis' friend, Mosley, walked to a carwash near the apartment complex and informed a friend working there that he had just shot someone over some pills. Borrowing a cell phone, Mosley called another friend to pick him up from the carwash and, upon being picked up, informed the driver that he had shot someone and directed the driver to a nearby neighborhood to pick up Davis. According to the driver, upon entering the vehicle, Davis asked Mosley why he shot the victim. Later that night, Davis informed his girlfriend that he killed someone and that he had been with Mosley.

Based on the contacts between Davis and the victim on the day of the shooting, investigators went to Davis' house where they left word to have Davis contact them. Thereafter, Davis' girlfriend drove him to a nearby convenience store to meet with officers. When the officers arrived, Davis immediately placed his hands behind his back saying, "go ahead and take me to jail." After informing Davis that he was not under arrest, the officers asked him to accompany them to police headquarters for an interview, and Davis agreed. He rode unhandcuffed in the front seat of an unmarked patrol car to the station. During his videotaped interview, Davis admitted the victim contacted him about buying Xanax, but made no mention of Mosley or Mosley's involvement with the victim's murder. At the conclusion of the interview, Davis was allowed to leave the police station and was not arrested until almost two weeks later.

The evidence presented at trial and summarized above was sufficient to enable a jury to find Davis guilty beyond a reasonable doubt of the crimes for which he was convicted, either directly or as a party to the crime. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[2]

---

[2] Mosley was tried in 2012 for malice murder and other crimes, convicted, and sentenced to life in prison without the possibility of parole; we affirmed his convictions in 2014. Mosley v. State, 295 Ga. 123 (757 SE2d 828) (2014).

2. Davis argues that the trial court erred in allowing evidence of Mosley's gang affiliation. At the start of trial, Davis' counsel argued that the State should not be able to elicit testimony that Mosley had tattoos showing an affiliation with a gang, and that Mosley identified himself as being associated with that gang in a text message to Davis. The trial court ruled that it would allow evidence that one of Mosley's tattoos and a text message he sent to Davis referenced the name of a gang. Evidence was presented that Mosley had a tattoo on his chest and arm that read "ABT Stunna." An investigator testified that Mosley had been documented as a member of the ABT gang, Davis' girlfriend testified that Mosley's street name was "Stunna," and a sergeant testified that Mosley identified himself in a text to Davis as "ABT Stunna" following the shooting.

Georgia's new Evidence Code governs the admission of the evidence here.[3] Generally, "[a]ll relevant evidence shall be admissible," OCGA § 24-4-402, but it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury

---

[3] Davis incorrectly asserts here that his trial was prior to the adoption of the new Evidence Code. However, this case was tried in May 2013, after the January 1, 2013 effective date of the new Code.

or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. And the trial court's rulings on the exclusion or admission of evidence are reviewed for a clear abuse of discretion. Parks v. State, 300 Ga. 303, 305-306 (2) (794 SE2d 623) (2016). Moreover, the exclusion of relevant evidence under Rule 403 "is an extraordinary remedy that should be used only sparingly." (Citations and punctuation omitted.) Davis v. State, 299 Ga. 180, 189 (2) (b) (787 SE2d 221) (2016); Olds v. State, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016).

The State sought to show a connection between the robbery and murder and the history of the gang, and the foreseeable consequence of Davis' participation in the robbery with Mosley. And as the trial court found, the evidence was also relevant to identify Mosley as the person who communicated with Davis by text shortly after the murder using someone else's phone. Although Davis argues that evidence of Mosley's gang affiliation was improper because neither he nor Mosley was charged with gang activity, "[t]here is no requirement that the State charge a defendant with violating the prohibition of participation in criminal street gang activity in OCGA § 16-15-4 in order to admit otherwise relevant evidence of gang activity." (Citations omitted.) Wolfe

6

v. State, 273 Ga. 670, 674 (4) (c) (544 SE2d 148) (2001).[4]

In light of the purpose expressed by the State and evidence of the communication between Davis and Mosley after the murder with Mosley using the name "ABT Stunna," we cannot say that the trial court abused its discretion in allowing the admission of evidence of Mosley's gang affiliation. See Olds, supra, 299 Ga. at 69-70 (2); OCGA § 24-4-401 ("'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). And, in light of the strong evidence of Davis' participation in the crimes, we conclude that it is highly probable that the admission of this evidence did not contribute to the jury's verdict. See Noel v. State, 297 Ga. 698, 701-702 (3) (777 SE2d 449) (2015).

3. Davis argues that the trial court erred by admitting "so-called similar transaction evidence" because the State failed to meet its burden under Williams v. State, 261 Ga. 640, 642 (2) (409 SE2d 649) (1991). Specifically, the testimony was that approximately two years prior to the shooting, Davis was in

---

[4] See also OCGA § 24-4-418 (c) (admissibility of criminal gang activity; "[t]his Code section shall not be the exclusive means to admit or consider evidence described in this Code section").

possession of "an all black handgun, 9-millimeter" and was "show[ing] it off," and a month or two prior to the shooting, either Davis or Mosley indicated that a 9-millimeter was "our[s]." Davis also complains of testimony that just prior to the murder, Cope sent the victim, who was looking for Xanax, Davis' cell phone number. Davis contends that the evidence was far removed in time, highly prejudicial and irrelevant.[5]

But any error in the trial court allowing evidence of the 9-millimeter handgun was harmless in light of the strong evidence of Davis' guilt. See, e.g., Glover v. State, 296 Ga. 13, 16 (3) (764 SE2d 826) (2014). And, evidence that Cope sent Davis the victim's cell phone number two days before the shooting was admissible to prove the circumstances surrounding the victim's presence at the scene of the shooting, even if it incidentally places Davis' character at issue. See United States v. Edouard, 485 F3d 1324, 1344 (II) (C) (11th Cir. 2007); United States v. Foster, 889 F2d 1049, 1053 (III) (A) (1) (11th Cir. 1989).

4. Davis contends that the trial court erred in denying his request for a continuance on the morning of trial to retain new counsel. On the morning of

---

[5] The admissibility of evidence formerly known as "similar transactions" is now governed by OCGA § 24-4-404 (b).

trial, Davis' counsel informed the trial court that his family wanted to hire attorney Bruce Harvey to represent him in the case. Davis' father then explained to the trial court that over the three days before trial, he had spoken with Harvey who had agreed to take Davis' case, and the reason he waited so late to talk to Harvey was because he needed to make sure he "had the funds," and Harvey did not want a retainer "unless the Judge would continue [the trial] until he was available in December." Davis explained to the trial court that he was not aware that he was going to trial until two weeks prior and that he "would feel more comfortable getting Mr. Harvey. I just feel like I . . . I don't feel like I'm being represented like I should." When the trial court asked Davis on what basis he felt that he was not being properly represented, Davis explained that his trial counsel did not file a motion he wanted her to file because "she said that wasn't a good idea, that it wouldn't be able to work." But he admitted, "I feel like if I asked her, that she would file it." Davis explained further that he felt he should have been informed that he "was going to trial more," that counsel should have stopped him from meeting with the prosecutor early on in the case, and that counsel should have filed a motion for an investigator "on [his] behalf." Trial counsel explained that although she had funds for an investigator, she did not

9

feel a need for one to prepare for trial, and that she did suggest to Davis to "offer some cooperation as part of the negotiation process" with the State. The trial court ruled that it would not continue the case.

> Every person indicted for [a] crime has a most valuable and important constitutional right, which entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses *reasonable diligence* to obtain his services. No person meeting these requirements should be deprived of his right to be represented by counsel chosen by himself, or forced to trial with the assistance only of counsel appointed for him by the court. Whether a particular defendant has exercised "reasonable diligence" in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion.

(Citations and punctuation omitted; emphasis in original.) <u>Flowers v. State</u>, 275 Ga. 592, 594 (2) (571 SE2d 381) (2002). In denying the motion for a continuance made on the morning of trial, the trial court considered, among other things, Davis' frustration concerning pretrial issues, but concluded that it did not appear that there would be any plea negotiation between the parties, and that "both sides are ready to go to trial. Both sides have their witnesses." And the evidence showed that Harvey had given Davis' family only a conditional agreement to take the case. Under these circumstances, we cannot say that the

10

trial court abused its discretion in denying the motion for a continuance. See id.

5. Davis contends that his conviction on Count 5, possession of a firearm during the commission of a felony, violated due process because it allowed the jury to convict him of a crime in a manner not charged in the indictment. More specifically, he asserts that it was error to submit Count 5 to the jury because the dismissed malice murder count was the underlying felony to Count 5. He claims that it was also error for the trial court to infer that the grand jury meant felony murder when Count 5 clearly alleged murder "as pertained to the dismissed malice murder count."

As to this alleged error, if (as seems likely) the District Attorney was trying to charge possession of a firearm during the commission of the felony of malice murder in Count 6 of the original indictment, and the grand jury that returned the indictment understood Count 6 in that way, then when the District Attorney asked to nolle pros the malice murder count before jury selection, Davis might have requested that Count 6 be dismissed too. But he did not, and he was not then tried on that charge. Instead, as the case was presented to the jury at trial, Count 5 of the now-redacted indictment charged possession of a firearm during the commission of a felony, "to wit: murder." The only "murder"

11

referred to in the indictment that the jury considered was felony murder, as charged in Counts 1 and 2 of the redacted indictment, and the evidence was presented and the case was argued in that light, without any mention of malice murder.

Davis did not raise a claim below that the variation between the crime originally indicted and the crime as actually tried was a material variance, so his argument here was not preserved for ordinary appellate review. See Johnson v. State, 295 Ga. 615, 617 (2) (759 SE2d 837) (2014). In any event, such a claim would have failed, because Davis has not shown that he was surprised by the way the firearm possession charge was tried or that he was prejudiced by any difference between the predicate felony being malice murder or felony murder (which are, it should be noted, both simply called "the offense of murder" in the murder statute, see OCGA § 16-5-1 (a) and (c)), he was informed of the charges against him, and the allegations were sufficient to protect him against another prosecution for the same offense. See Delacruz v. State, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006).

Davis argues further that the trial court's instruction to the jury on Count 5 allowed the jury to deviate from the redacted indictment. Counts 1 and 2 of

12

the redacted indictment charged Davis with " **FELONY MURDER (O.C.G.A. 16-5-1)** for the said accused . . . did then and there unlawfully while in the commission of a felony . . . cause the death of Angelo Larocca." (Emphasis in original.) Count 6 charged Davis with "the offense of **POSSESSION OF A FIREARM DURING COMMISSION OF A FELONY (O.C.G.A. 16-11-106)** for the said accused . . . did then and there unlawfully have within arms reach of [his] person a firearm, to wit: a handgun, during the commission of a felony, to wit: murder, which is a crime against the person of another."[6] (Emphasis in original.) Only the redacted indictment went out with the jury, so the jurors were unaware of the previously charged but nolle prossed malice murder count.

The trial court instructed the jury on the counts alleged in the redacted indictment, specifically charging the jury, "A person commits the crime of felony murder when in the commission of a felony that person causes the death of another human being," and that "[i]f you find and believe beyond a reasonable doubt that the defendant committed the homicide alleged in this bill

---

[6] A second count of possession of a firearm during the commission of a felony alleged armed robbery as the predicate felony.

13

of indictment at the time the defendant was engaged in the commission of the felony . . . then you would be authorized to find the defendant guilty of murder." In its charge to the jury on possession of a firearm during the commission of a felony, the court explained that "[t]he offense of murder is a felony under the laws of this state and it is defined as previously stated."

As alleged in the redacted indictment, the predicate act for the possession charge was "murder," and the only murder charge the jury was given at trial was the alleged felony murder. There was nothing in the trial court's instructions that allowed the jury to deviate from the charges in the redacted indictment. Therefore, the trial court did not err in its instructions to the jury. Compare King v. Waters, 278 Ga. 122, 123-124 (2) (598 SE2d 476) (2004) (lower court erred in failing to vacate possession conviction when predicate, an "essential element," was vacated). And the evidence was certainly sufficient to support the jury's guilty verdicts on the felony murder and possession charges. Davis' argument here fails.[7]

---

[7] We must, however, vacate Davis' sentences on the felony murder counts. "Because both [felony] murder counts involved the same victim, one of the guilty verdicts was vacated by operation of law." Cowart v. State, 294 Ga. 333, 336 (2) (751 SE2d 399) (2013). Upon remand, the trial court must exercise its sentencing discretion to determine on which felony murder conviction sentence is to be imposed. McClellan v. State, 274 Ga. 819, 820-821 (1)

14

6. Davis argues that he received ineffective assistance of counsel on several grounds.

> To prevail on a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984), an appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. If an appellant fails to meet either prong of the Strickland test, it is not incumbent upon this Court to examine the other prong.

(Citations and punctuation omitted.) Dunn v. State, 291 Ga. 551, 553 (4) (732 SE2d 524) (2012). Davis contends that trial counsel was ineffective for failing to challenge the voluntariness of his statement to police, for failing to file a motion to suppress the contents of his cell phone, and for failing to object to the trial court's qualification of an expert to explain slang terms and to the admission of Mosley's gang affiliation and activity. But Davis cannot establish that his trial counsel was ineffective on these grounds.

(a) Davis argues that counsel should have challenged the admission of his statement to police. In denying his motion for new trial on this ground, the trial court found that Davis voluntarily met with officers who informed him that he

(b) (561 SE2d 82) (2002). We note that if the trial court elects to sentence Davis on the felony murder count predicated on aggravated assault, it must also sentence him on the armed robbery count which would not merge.

15

was not under arrest.

The record reveals that a detective left his phone number with Davis' father and asked that Davis contact him. Davis contacted the detective and agreed to meet him at a convenience store. When the detective arrived, Davis saw the detective's badge and gun and "turned around and basically put his hands behind his back and says, Okay, well, just go ahead and take me to jail." The detective told Davis that he was not under arrest and that he only wanted to ask a few questions. Davis agreed to talk to police.  He rode in the front seat of a patrol car to the police station and was not placed in handcuffs. Davis gave a statement to police but at the conclusion of the interview, invoked his right to counsel and left voluntarily.[8] He was not arrested until nearly two weeks after the interview when he turned himself in.

Davis argues that he believed he was under arrest and was "high and falling asleep" when he gave his statement. The video recording shows that he fell asleep for a short period while he was alone in the interview room and admitted to the officer that he had "smoked" prior to the interview. But Davis

_____

[8] The portion of video where Davis invoked his right to counsel and the statements thereafter was not played for the jury.

16

responded to officers during questioning and appeared coherent, if somewhat intoxicated.

Even assuming that Davis was intoxicated, based on his demeanor, conduct, and responses to officers during the interview, he has not shown that any intoxication rendered his statement involuntary. See Norton v. State, 293 Ga. 332, 334-335 (2) (745 SE2d 630) (2013) (although defendant admitted he had taken 15-20 pills of Xanax and had been drinking bourbon, he appeared to understand what was occurring and his *Miranda* rights, and spoke freely with officers; no error in denial of motion to suppress where evidence supported court's determination that intoxication did not affect knowing and voluntary waiver of *Miranda*); Carter v. State, 285 Ga. 394, 398 (5) (677 SE2d 71) (2009) (although defendant admitted she had drugs in her system during interview with police, no error in admission of statement where evidence showed she was able to communicate with officers in "lucid and coherent manner"); see also Shelby v. State, 265 Ga. 118, 119 (2) (453 SE2d 21) (1995) (although defendant had been drinking and had a blood alcohol level of 0.24 an hour and a half before interview, he was alert enough to talk with officers and understand); Mullis v. State, 248 Ga. 338, 340-341 (9) (282 SE2d 334) (1981) ("the mere fact that the

17

appellant may have been intoxicated at the time of making the statement does not necessarily render it inadmissible. [Cits.]"). And because the record reveals that Davis was not under arrest, was clearly informed that he was not under arrest, and was not threatened when he gave his non-custodial statement to police, any motion to challenge his statement would have been futile, and Davis therefore cannot show ineffectiveness of counsel on this ground. See, e.g., Drake v. State, 296 Ga. 286, 289-290 (2) (766 SE2d 447) (2014) (under totality of circumstances, defendant was not under arrest when he gave voluntary statement to police); Devega v. State, 286 Ga. 448, 454 (4) (e) (689 SE2d 293) (2010) (counsel not ineffective for failing to challenge defendant's statement where no error in its admission).

(b) Citing Riley v. California, ___ U. S. ___ (134 SCt 2473, 189 LE2d 430) (2014), Davis argues that his trial counsel was ineffective in failing to move to suppress evidence "from an illegal search and seizure" of his cell phone without a search warrant. But Riley involved the seizure of cell phones incident to arrest and the search of digital information they contained. 134 SCt at 2493 (IV); Marchman v. State, 299 Ga. 534, 538-539 (2) (787 SE2d 734) (2016). Here, the testimony at trial and the videotape of Davis' interview with police

18

show that he voluntarily gave officers the cell phone, not once, but twice. And when officers observed Davis manipulating the phone later during the interview, they seized it until they could obtain a search warrant. The United States Supreme Court has approved this reasonable preventative step to preserve evidence. See Riley, supra, 134 SCt at 2487-2488 (III) (A) (2).

(c) Davis argues that the court erred in concluding that his ineffective assistance claim failed because he had no standing. He asserts that trial counsel failed to challenge the admission of the telephone records the State obtained from the cell phone service provider. However, the record reveals that Davis was not the subscriber listed for the phone,[9] and Davis has provided no evidence "that he had any legal link to the account, much less any ownership interest in it; nor has he shown that he was an authorized user on the account, or the de facto exclusive, primary, or customary user of the cell number at issue." Hampton v. State, 295 Ga. 665, 669 (2) (763 SE2d 467) (2014). As the trial court found, Davis had no standing to seek suppression of the records at issue, and his trial counsel cannot be found to have performed deficiently in failing to

---

[9] The subscriber listed was "George Davis," which is the name of Davis' father.

19

see suppression. See id.

And in any event, even if Davis had standing and counsel had sought to suppress the records, Davis has not shown a reasonable probability that the outcome of his trial would have been different without them in light of the other strong evidence of his guilt. See Teasley v. State, 293 Ga. 758, 765 (4) (749 SE2d 710) (2013).

(d) Davis contends that counsel was ineffective in failing to object to the tendering of an expert, a police detective, to give testimony concerning the meaning of slang terms used by witnesses.

> To qualify as an expert generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status. The trial court has broad discretion in accepting or rejecting the qualifications of the expert, and its judgment will not be disturbed on appeal absent an abuse of discretion.

(Citations and punctuation omitted.) Allen v. State, 296 Ga. 785, 790 (7) (770 SE2d 824) (2015).[10]

---

[10] See OCGA § 24-7-707: "In criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." And,
> [a]lthough Georgia's new Evidence Code is applicable to the trial of this case, the evidentiary requirements relating to the admissibility of expert opinion

Davis argues that some of the expert's opinion testimony was cumulative of other evidence presented by the witnesses at trial and the State could have asked those witnesses the meaning of certain terms during their testimony. But the cumulative nature of one of the terms explained by the expert does not require the exclusion of his testimony. Davis argues further that the expert's opinion was mere speculation that invaded the province of the jury and impermissibly bolstered the testimony of the State's witnesses. To the contrary, the expert, a detective, testified to his extensive experience with street slang. He explained further that he had previously testified in many robbery cases as a lead investigator or assistant, and participated in numerous witness interviews. The detective's explanation of slang terms such as "jug" or "jugging" and "hit a lick," terms that are not part of the everyday vernacular, was not impermissible. See Lowe v. State, 310 Ga. App. 242, 244 (2) (a) (712 SE2d 633) (2011).

There was therefore no error in the admission of this evidence, so counsel

---

testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67). Accordingly, it is appropriate to rely, as we do in this case, on decisions under the old Code. See Jones v. State, 299 Ga. 40, 42 (2) n. 2 (785 SE2d 886) (2016).

Mosby v. State, 300 Ga. 450, 453 (2) n.2 (796 SE2d 277) (2017).

21

could not be deficient for failing to file a futile motion. See Ventura v. State, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008) ("The failure to pursue a futile objection does not amount to ineffective assistance. [Cit.]").

Moreover, in light of the strong evidence that Davis was, at the very least, a party to the crimes, he has failed to show that counsel's performance, even if deficient, resulted in a reasonable probability of a different outcome of the proceedings. See Rainwater v. State, 300 Ga. 800, 804 (3) (797 SE2d 889) (2017).

7. Davis asserts that the trial court failed to exercise its discretion in granting a new trial under the grounds discussed in OCGA §§ 5-5-20, 5-5-21, and 5-5-25. He contends that there was insufficient evidence showing he had the mens rea required for armed robbery. "A motion for new trial on these grounds, however, is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court." (Citation omitted.) Smith v. State, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017). In its order denying Davis' motion for new trial, the trial court explained that it had considered and weighed the evidence applying "the standard of acting as the 'thirteenth juror'" and found Davis was not entitled to a new trial on the general grounds. The trial court

22

having exercised its discretion under this standard, and this Court having found the evidence was sufficient to support the verdict, we find no abuse of discretion in its denying the motion for new trial. See id.; Burney v. State, 299 Ga. 813, 815-816 (1) (c) (792 SE2d 354) (2016).

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided June 19, 2017.

Murder. Gwinnett Superior Court. Before Judge W. Davis.

Bruce S. Harvey, for appellant.

Daniel J. Porter, District Attorney, Christopher M. Quinn, Michael D. Morrison, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.