303 Ga. 232
FINAL COPY

S17A1662. RAMIREZ v. THE STATE.

GRANT, Justice.

Orlando Ramirez appeals his convictions for malice murder, attempted

murder, and other crimes associated with a shooting in which Bruno Rodriguez

was killed and Daniel Maldonado-Flores was injured. In his sole enumeration

of error, Ramirez argues that the trial court erred in excluding evidence of other

incidents of criminal activity at the bar where the shooting took place. We

disagree, and therefore affirm.[1]

---

[1] The shootings occurred on March 23, 2014. On May 29, 2014, Ramirez was indicted by a Whitfield County grand jury for malice murder of Rodriguez (Count 1), felony murder predicated on aggravated assault of Rodriguez (Count 2), aggravated assault by shooting Rodriguez with a gun (Count 3), attempted murder of Flores (Count 4), aggravated assault by shooting Flores with a gun (Count 5), and two counts of possession of a weapon during the commission of a crime (Counts 6-7). At the conclusion of a jury trial held December 15-19, 2014, Ramirez was found guilty on all seven counts. The trial court sentenced Ramirez to imprisonment for life without parole for Count 1; 30 years consecutive for Count 4; 5 years for Count 6, to be served consecutively to the sentence for Count 1 and concurrent with Count 4; and 5 years for Count 7 consecutive to Count 4. The remaining counts were merged or vacated by operation of law. See *Green v. State*, 283 Ga. 126, 130 (657 SE2d 221) (2008). On March 5, 2015, Ramirez filed a motion for new trial, which he amended on June 6, 2016, after the appearance of new counsel. Following a hearing, the trial court denied the motion for new trial on August 30, 2016. Ramirez filed a timely

I.

Viewed in the light most favorable to the verdicts, the evidence admitted at trial showed that in the early morning hours of March 23, 2014, Ramirez arrived at Las Delicias bar with his friend Fernando Resendiz and two others. Resendiz stayed in the car texting while Ramirez took Resendiz's .380 pistol from the console and attempted to enter the bar. Flores, who was working as a security guard checking identification at the door, blocked Ramirez's entry and asked for his identification. Ramirez first showed Flores a picture of Santa Muerte (Holy Death) and said in Spanish, "it's death." Flores again asked for Ramirez's identification, which Ramirez then produced, showing that he was 20 years old. Flores refused Ramirez entry into the bar for being underage.

Ramirez began shouting at Flores, took a step back, pulled out a gun, and pressed it against Flores's chest. Flores grabbed Ramirez's hand and the two men wrestled for the gun, which discharged into Flores's leg. The struggle for the gun continued into the parking lot and the gun discharged a second time, striking no one. Flores fell to the ground and another security guard, Rodriguez, rushed toward Ramirez. Rodriguez tried to get the gun from

notice of appeal on September 29, 2016, and the case was docketed in this Court to the August 2017 term and submitted for a decision on the briefs.

Ramirez, but Ramirez shot him; Rodriguez immediately collapsed. Ramirez then shot Rodriguez a second time, killing him. After shooting Rodriguez, Ramirez walked toward Flores, who was on his knees in the parking lot. Ramirez nonetheless shot him in the back. Flores managed to get up and run away, but Ramirez briefly chased him around a truck while pointing his gun at him. Ramirez then gave up the chase and attempted (unsuccessfully) to enter the front door of the bar before leaving the property on foot. Security cameras at the bar captured all but the initial interaction between Ramirez and Flores, which was blocked from view by the open door of the bar. The recording from the security cameras was played for the jury at trial.

Resendiz, who had driven away when the gunfire began, returned to the bar and picked up Ramirez. Two other passengers in the car testified that Ramirez seemed excited, exclaimed that he wished he had had more bullets, threatened the passengers' families if they told police, and said that he was happy about what happened because the security guard "deserved it." Ramirez said that his brother had been "jumped" at Las Delicias and a security guard had left him lying there.[2]

---

[2] As noted below, trial testimony showed that Ramirez's brother had been badly beaten by other bar patrons during a fight at Las Delicias the month before the shooting in this case.

Ramirez testified at trial and claimed that he shot Flores and Rodriguez in self-defense. Ramirez testified that when Flores initially approached him, Flores was in an aggressive posture and seemed angry already. Ramirez started to back away, he said, but felt threatened by the crowd of people around him, who were purportedly holding bottles and moving toward him. Ramirez claimed that he moved back in the direction of Flores, who raised his hands "like he was going to come at" Ramirez and then rushed toward Ramirez and grabbed his left arm. Ramirez pulled out the .380 "almost without thinking," and Flores immediately grabbed his hand. Ramirez testified that Flores, rather than trying to secure the gun, was pushing it against Ramirez's chest and saying, "You are going to see." Ramirez claimed that he was just trying to get away from Flores, but accidentally fired the first shot while trying to pull free. He admitted to shooting Flores a second time, but claimed that it was because Flores was still attacking. Ramirez also admitted that he shot Rodriguez twice, saying that his first shot was instinctive when Rodriguez appeared as a "black shadow" rushing toward him. According to Ramirez's testimony, the second shot occurred either after Rodriguez "crashed into" him, or alternatively, while Rodriguez "was in mid-air."

Although Ramirez does not challenge the sufficiency of the evidence supporting his convictions, it is our practice in murder cases to review the record and determine whether the evidence was legally sufficient under the standard set out in *Jackson v. Virginia,* 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We have done so, and we conclude that the evidence introduced at trial and summarized above was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Ramirez was guilty of the crimes for which he was convicted. See id. at 319.

## II.

Ramirez claims error in the trial court's ruling excluding evidence of other incidents of criminal activity at Las Delicias bar. He sought to introduce police testimony about ten incidents at Las Delicias between November 2010 and April 2014, including one case of cocaine possession; several bar fights, including instances in which other bar security guards—not Flores or Rodriguez—tased or pepper sprayed fractious patrons; a robbery in the bar's restroom; a shot fired (without injury) in the parking lot after hours; and one occasion in which Rodriguez was cited for admitting an individual into the bar without first checking his identification. We find no error in the trial court's exclusion of the proffered evidence.

Ramirez argues that the evidence at issue is relevant and that it should be assessed under the framework of cases governing *Terry*[3] stops, in which the fact that an area is known to have a high crime rate may be relevant in determining whether police reasonably suspected that the defendant was engaged in criminal activity. That contention is plainly incorrect. The reasonableness of a police officer's suspicion of criminal activity is a wholly different matter from a defendant's belief that he is in danger of being killed or severely injured unless he uses deadly force to defend himself. The State, for its part, counters that to the extent the violent "character" of the bar is relevant to Ramirez's self-defense claim, evidence of that character should be limited to general reputation or opinion evidence under the rules governing the admissibility of a victim's reputation for violence in a self-defense case. See OCGA §§ 24-4-404 (a) (2), 24-4-405 (a). The State's analysis also fails to provide a useful comparison. To begin, a place cannot be a victim. And the reputation of a place is not "character evidence" subject to the same rules as evidence of a witness's character or propensity for violence.

---

[3] See *Terry v. Ohio*, 392 U.S. 1 (88 SCt 1868, 20 LE2d 889) (1968).

Instead, as with many evidentiary decisions under Georgia's current Evidence Code, determining the admissibility of the evidence of other incidents Ramirez sets out involves the familiar process of weighing its probative value against the prejudice, confusion, or waste of time likely to result from admission. As a general rule, "[a]ll relevant evidence [is] admissible." OCGA § 24-4-402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Even relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. We review the trial court's ruling on the admissibility of evidence for a clear abuse of discretion. *Davis v. State*, 301 Ga. 397, 399 (801 SE2d 897) (2017).

Ramirez sought to show that the dangerous, violent environment at Las Delicias influenced his state of mind and made his extreme reaction to perceived threats from Flores and Rodriguez reasonable under the circumstances. See OCGA § 16-3-21 (deadly force justified only if a person

"reasonably believes that such force is necessary to prevent death or great bodily injury to himself"). Ramirez does not contend that he knew about any of the proffered occurrences at the time of the shooting; nevertheless, he argues that the specific instances of criminal activity at the bar should have been admitted to show the jury that his perception of danger at the bar was reasonable. It is difficult to see, however, how the occurrence of events of which Ramirez had no knowledge could be relevant to his state of mind on the night of the shooting, or how they could have influenced his sense of immediate danger from a bar employee checking identification at the front door. Only three of the incidents involved either of the security guard victims, Flores or Rodriguez: in addition to the citation for failure to check identification, Rodriguez assisted in evicting an individual who was harassing two bar employees on one occasion, and on another occasion, a bar customer hit Flores on the head with a bottle. But none of the incidents shows a propensity for violence in either of the victims. Nor do they tend to make it more likely that Ramirez reasonably believed that deadly force was necessary to defend himself against Flores or Rodriguez. The probative value of this evidence would be remarkably small even if Ramirez had alleged that he was aware of the incidents at the time of the murder. But without such an

allegation, the evidence fails to clear even the low hurdle of relevance under Rule 401.

Moreover, to the extent that the bar's reputation for violent incidents influenced Ramirez's state of mind, that reputation and its effect on Ramirez was well established through other evidence admitted at trial. Ramirez testified that although he had never been to Las Delicias before the night of the shooting, he had heard that the bar was a violent place, and that gang fights, drug use, and corrupt security guards were commonplace there. Ramirez was a member of the Surenos gang, and he testified that he was aware that a rival gang, the Tiny Winos, often went to Las Delicias and liked to "pick fights." None of the other witnesses who addressed the issue denied that the bar was a violent place, such that evidence of specific instances of violence could be relevant for impeachment purposes. To the contrary, Flores testified that bar fights and patrons throwing or hitting others with bottles were frequent events. One police detective testified that members of the Surenos and the Tiny Winos gangs were often present at Las Delicias, and another detective testified that Ramirez's brother had been hospitalized after being badly beaten at the bar the month before the shooting. Thus, even if the proffered incidents had some marginal relevance to Ramirez's self-defense claim, any slight probative value

was "substantially outweighed by . . . considerations of . . . waste of time [] or needless presentation of cumulative evidence," and the trial court acted within its discretion in excluding the evidence.  OCGA § 24-4-403.

Judgment affirmed.  All the Justices concur, except Melton, P.J., and Blackwell, J., who concur in judgment only in Division 2.

Decided March 5, 2018.

Murder. Whitfield Superior Court. Before Judge Boyett.

<u>Micah J. Gates</u>, for appellant.

<u>Herbert M. Poston, Jr.</u>, District Attorney; <u>Christopher M. Carr</u>, Attorney General, <u>Patricia B. Attaway Burton</u>, Deputy Attorney General, <u>Paula K. Smith</u>, Senior Assistant Attorney General, <u>Matthew D. O'Brien</u>, Assistant Attorney General, for appellee.