302 Ga. 769

FINAL COPY

S17A1399.  PROTHRO v. THE STATE.

GRANT, Justice.

After a bench trial, Appellant Anthony Prothro was found guilty of malice murder and other crimes associated with the violent death of his

grandfather, Alvin Driver.[1]  On direct appeal, Prothro claims that he received ineffective assistance of trial counsel.  We disagree and affirm.

I.

Viewed in the light most favorable to the verdict, the evidence admitted at trial showed the following.  On January 16, 2013, Anthony Prothro climbed into his grandfather's house through the window of what used to be Prothro's bedroom.[2]  Knowing his grandfather's usual schedule, Prothro

---

[1] The crimes took place between January 16 and 19, 2013.  On October 7, 2013, a Carroll County grand jury indicted Prothro for malice murder (count 1), felony murder predicated on aggravated assault by striking Driver on the head with a dumbbell (count 2), aggravated assault (count 3) and aggravated assault on a person over the age of 65 (count 6) by striking Driver on the head with a dumbbell, burglary in the first degree (counts 4, 5, and 9), armed robbery (count 7), theft by taking (count 8), arson in the first degree (count 10), concealing the death of another (count 11), and financial transaction card fraud (count 12).  Prothro pled guilty to counts 8 through 12.  He waived his right to a jury trial on the remaining counts in the indictment, and after a bench trial held November 5 through 7, 2013, the court found Prothro guilty of counts 1 through 5 and 7 and granted his motion for directed verdict of acquittal on count 6.  The trial court sentenced Prothro to life imprisonment without the possibility of parole for malice murder; 20 years' imprisonment each for counts 4, 5, 9, and 10, to run concurrently; 10 years each for counts 8 and 11, to run concurrently; and 3 years for count 12, to run concurrently.  The felony murder count (count 2) was vacated by operation of law.  The trial court initially merged counts 3 and 7 with the malice murder count for sentencing, although the court later found that count 7 did not merge.  Prothro filed a motion for new trial on November 18, 2013, which he amended on August 4, 2014, after the appearance of new counsel.  The trial court held a hearing and denied the motion for new trial on February 23, 2016.  On July 17, 2016, Prothro filed a motion for out of time appeal, which the trial court granted on August 18, 2016, after finding that Prothro had not been served with the order denying his motion for new trial.  Prothro filed a notice of appeal on August 19, 2016.  This case was assigned to the August 2017 term of this Court and submitted for decision on the briefs.

[2] At the time of the murder, Prothro had moved out of the house and lived with his mother.

2

expected him to be in the shower and planned to steal money from his wallet to buy drugs. When he found that his grandfather was not in the shower, Prothro waited for a time and then climbed back out of the window and entered the house through the front door. He made up a story about needing to see a doctor and asked his grandfather for money. The two argued. Prothro went back to his old bedroom and returned to the living room with a 30-pound dumbbell that he used to strike his grandfather several times on the head. After bludgeoning his grandfather with the dumbbell, Prothro went outside and vomited into the bushes. He sat on the back porch for a while and smoked a cigarette, and then went back into the house where his grandfather lay on the living room floor to take the wallet out of his injured grandfather's pocket. He also took his grandfather's keys and left in his truck. When Prothro departed, his grandfather was bleeding from the head and "snoring." Prothro later used his grandfather's debit card to rent movies.

A few days later, Prothro returned to the house late at night, poured gas around the house and on his grandfather's body, and set the house on fire. A neighbor saw the flames and called 911. After firefighters responded and eventually extinguished the fire, they found the grandfather's body inside on the living room floor. Samples taken from the house and from the

grandfather's clothes tested positive for gasoline; an arson investigation determined that the fire had been intentionally started in Prothro's bedroom.

A deputy medical examiner performed an autopsy and concluded that Prothro's grandfather had died of blunt force trauma to the head involving multiple skull fractures, as well as bruising and bleeding of the brain. The medical examiner identified at least eight forceful impacts to the top, back, and right side of the victim's head, though she conceded that it was possible that each blow with a dumbbell could cause more than one impact. The medical examiner also observed fractured bone and cartilage in the victim's neck, consistent with direct compression or "squeezing" of the neck. A forensic pathologist found no soot in the victim's airway and no carbon monoxide in the victim's lungs, indicating that he was dead before the fire started.

Police canvassed the grandfather's neighborhood and interviewed a neighbor who reported seeing Prothro climb through his grandfather's window a few days before the fire. After obtaining a search warrant, investigators searched the apartment where Prothro and his mother lived and found the movies that had been rented with the victim's debit card.

The lead police investigator interviewed Prothro at the Carrollton Police Department on three occasions. Each time, Prothro went voluntarily to the police station with his mother; he was not under arrest. During the third interview, Prothro admitted that he had gotten into a fight with his grandfather the week before, after his grandfather refused to give him money. Prothro confessed that he hit him with a dumbbell three or four times on the head, took his money and debit card, and left him to die. He also confessed that he returned three days later to set fire to the house. Although Prothro has not challenged the sufficiency of the evidence supporting his convictions, we have independently examined the record according to our usual practice and conclude that the evidence admitted at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Prothro was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

II.

Prothro claims that his trial counsel provided constitutionally ineffective assistance by waiting until the eve of trial to file a motion for the assistance of a forensic psychologist at trial. He argues that the trial court would have granted the motion if it had been filed earlier, in compliance with

the Uniform Superior Court Rules. According to Prothro, the trial testimony of a forensic psychologist would have persuaded the trier of fact to find him guilty of the lesser offense of voluntary manslaughter, rather than malice murder. We are unconvinced.

In order to prevail on his claim of ineffective assistance of counsel, Prothro must show both that his attorney's performance was deficient and that he was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-696 (104 SCt 2052, 80 LE2d 674) (1984). To demonstrate prejudice, Prothro "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The failure to satisfy either prong of the *Strickland* test is fatal to a claim of ineffective assistance of counsel. See *Speziali v. State*, 301 Ga. 290, 293 (800 SE2d 525) (2017) (citing *Strickland*, 466 U.S. at 697); see also *Schmidt v. State*, 297 Ga. 692, 697 (778 SE2d 152) (2015).

While Prothro's trial counsel admitted at the motion for new trial hearing that his motion for expert assistance was untimely, there is no evidence that the outcome of the trial would have been different if the motion

6

had been filed earlier. To begin, the trial court evidently considered the motion on its merits, despite the late filing. The court even held a hearing on the motion, where Prothro's mother, one of Prothro's friends, and forensic psychologist Dr. Lauren Reba-Harrelson testified. Dr. Harrelson had evaluated Prothro before trial and determined that he was competent to stand trial, that he could tell the difference between right and wrong at the time of the alleged offense, and that he did not experience a delusional compulsion that overmastered his will to resist committing the act. In denying Prothro's request for the assistance of a forensic psychologist at trial, the court ruled that Prothro had not met his burden of showing that his sanity at the time of the offense would be a significant factor at trial. See *Ake v. Oklahoma*, 470 U.S. 68, 83 (105 SCt 1087, 84 LE2d 53) (1985). Although the court also noted in its order that the motion had been filed late, Prothro has presented no evidence that the trial court would have ruled differently if the motion had been filed earlier.

Nor has Prothro shown that the requested expert assistance would have changed the outcome at trial, even if the motion had been granted. At the hearing on Prothro's motion for new trial, Prothro proffered the testimony of psychologist James Stark, Ph.D. Dr. Stark evaluated Prothro after trial in

order to determine his current mental state and make "educated guesses" as to what his mental state was at the time of the crimes. Dr. Stark made no determination regarding Prothro's legal sanity at the time of the offenses or his competence to stand trial. Based on his evaluation, Dr. Stark testified that several factors, including Prothro's alcohol and drug use and suicidal depression, led to Prothro being "very upset" generally in the time period leading up to his grandfather's killing. He also testified that Prothro said he was "out of [his] mind" on drugs on the day of the killing, and that Prothro argued with his grandfather when he refused to give Prothro money to buy more drugs.

Contrary to Prothro's assertions, we cannot agree that there is a reasonable probability that the proffered testimony would have led the trier of fact to find Prothro guilty of voluntary manslaughter rather than murder. The offense of voluntary manslaughter is committed when the accused kills "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2. "[T]he provocation required to mitigate malice is that which would arouse a heat of passion in a *reasonable* person"; whether the provocation was sufficient to provoke deadly passion in the particular

defendant is irrelevant. *Johnson v. State*, 297 Ga. 839, 842 (778 SE2d 769) (2015) (emphasis in original); see *Lewandowski v. State*, 267 Ga. 831, 832 (483 SE2d 582) (1997) (psychologist's expert testimony regarding the defendant's mental state properly excluded as irrelevant to claim of voluntary manslaughter). In finding Prothro guilty of malice murder rather than voluntary manslaughter, the trial court specifically stated that it had considered the evidence and arguments about provocation and did not believe that killing someone "because you're not able to get money to buy drugs" fit within the objective reasonable person standard for voluntary manslaughter.

In short, Prothro has not shown a reasonable probability that the requested expert testimony would have been admitted if the motion had been filed earlier, or if admitted, would have led the court to a different conclusion.

Accordingly, his ineffective assistance of counsel claim fails. See *Strickland*, 466 U.S. at 693; *Barge v. State*, 294 Ga. 567, 569 (755 SE2d 166) (2014).

Judgment affirmed. All the Justices concur.

Decided January 29, 2018.

Murder. Carroll Superior Court. Before Judge Hamrick.

<u>Swindle Law Group, Jason W. Swindle, Sr., Dane M. Garland</u>, for appellant.

<u>Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General</u>, for appellee.