306 Ga. 759
FINAL COPY

S19A0591. RIGGS v. THE STATE.

BOGGS, Justice.

Glenn Vincent Riggs II was convicted of murder and armed robbery in connection with the 2013 strangulation and beating death of Dr. Charles Mann III. He appeals, asserting error in the trial court's refusal to allow him to answer a question on re-direct examination or, in the alternative, ineffective assistance of counsel due to failure to preserve that error for appeal. For the reasons below, we affirm.[1]

---

[1] The crimes occurred on November 22, 2013. On January 8, 2014, a Richmond County grand jury indicted Riggs for malice murder, felony murder predicated upon aggravated assault, and armed robbery. Riggs was tried before a jury from October 17 to 19, 2016, and was found guilty on all counts. The trial court sentenced Riggs to serve life in prison without parole for malice murder and twenty years consecutive for armed robbery. The felony murder count was vacated by operation of law. See *Culpepper v. State*, 289 Ga. 736, 739 (2) (a) (715 SE2d 155) (2011). On November 9, 2016, Riggs filed a timely motion for new trial, which he amended with new counsel on February 15, 2018. After a hearing on June 8, 2018, the trial court denied the motion on September 14, 2018. Riggs filed a timely notice of appeal, and the case was docketed in this court for the April 2019 term and submitted for decision on the briefs.

Viewed in the light most favorable to the verdicts, the evidence shows that Riggs solicited sex online, and Mann responded to one of Riggs' ads on Craigslist. Riggs gave Mann his address and phone number and told him to bring cash, a laptop, and beer to Riggs' home. When Mann arrived, Riggs invited him inside and escorted him to the bedroom. Riggs went to the bathroom while Mann undressed, and when Riggs returned, he told Mann they were not going to have sex and to leave the cash, the laptop, and the beer. Mann turned to leave the room, and Riggs attacked him from behind, put him in a headlock, and choked him until he passed out. Riggs then beat Mann in the head with a 25-pound weight "to make sure that he was gone."

After going through Mann's pockets, Riggs wrapped Mann's body in bedsheets, placed it in the trunk of Mann's car, and drove the car to a bridge where he dumped Mann's body into the creek below. Riggs then drove Mann's car to another location, wiped it down, and abandoned it on a vacant parcel of land at the end of a partially blocked dirt road or trail. Riggs walked home and tried to

clean up the scene, tearing up and replacing parts of the carpet where the murder took place and bleaching other parts to remove Mann's blood. The next day, Riggs called his grandmother, who owned the house where Riggs lived, and enlisted her help in cleaning up the blood, telling her that a terminally ill friend with cancer had hemorrhaged while visiting him.

When Mann did not show up for work, his supervisor contacted law enforcement. Meanwhile, a concerned citizen noticed the abandoned car and contacted police, who found blood in and around the trunk as well as an index card with directions to Riggs' home and his phone number. When the police went to Riggs' home and questioned him, he denied knowing the victim or anything about the index card. The next day, Riggs messaged a close friend on a social media site, saying, "I'm really gone for a long time. I killed a man . . . and the law onto me . . . ." The friend called the police about the message. Riggs was arrested and confessed to killing Mann, telling investigators where they would find the body. Riggs' recorded statement was played for the jury. At Riggs' home, police found

Mann's blood as well as his clothing, watch, and shoes in a trash can behind the house.

Mann had extensive injuries to his neck and head, including fractured vertebrae, a fractured hyoid bone and thyroid cartilage, petechial hemorrhages indicative of strangulation, and extensive blunt force trauma to the mouth, face, and head, including open wounds, displaced teeth, a fractured jaw, and broken facial bones. The medical examiner attributed the death to strangulation and blunt force head trauma.

At trial, Riggs testified in his own defense. On direct examination by his counsel, Riggs claimed that he was not interested in having sex with Mann, but pretended that he was in order to lure Mann to his house and rob him. Riggs also testified that Mann said, "We're going to do this whether you like it or not." On cross-examination, Riggs volunteered that he was afraid for his life and that he also was afraid he would be raped. But Riggs also acknowledged that he never told the police investigator who interviewed him that he was afraid for his life or that Mann

threatened him, either with the words he testified to on direct examination or otherwise.

1. Though Riggs has not challenged the sufficiency of the evidence to support his convictions, it is this Court's practice in murder cases to review the record to determine the legal sufficiency of the evidence. Having done so, we conclude that the evidence summarized above was more than sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Riggs was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Riggs asserts that the trial court erred in barring his testimony that he was raped at age 11. On cross-examination, after Riggs testified that he was afraid for his life, the prosecutor asked Riggs why he was afraid of Mann, a much older and smaller man: "This man right here, you, 210, five-nine, you're afraid for your life?" Riggs responded:

> A. I thought he was going to rape me.
> Q. You thought he was going to rape you, but you invited him there under the pretense of sex; right?

A. No. I invited him there under the pretense of robbing him.

Q. But you led him to believe that you were going to have sex?

A. Online. But I thought — never mind.

Q. And then you were so afraid for your life after you killed him that you went through his pockets?

A. Well, yes.

On redirect, Riggs' counsel asked, "And the last thing that you indicated was that you were afraid of being raped. Why would that be a fear of yours?" The State then requested a bench conference and objected, challenging the relevance of the question. The trial court initially stated that it would allow the question but then changed its mind, ruling as follows:

> I'm not going to let him open that door. [Trial counsel] didn't ask it to begin with. [The prosecutor] had him on cross. I'm not going to let you go into that. I changed my mind. I feel that the probative value — it would be unfair prejudice. If it was brought out on direct by him and did not go into these other issues about the molestation, I'm not going to let you go into now merely because of the fact that you questioned him strongly about it.

Riggs' counsel objected to the trial court's ruling.

At the hearing on Riggs' motion for new trial, Riggs testified as

to how he would have answered the challenged question:

> Q. And why were you worried that Mr. Mann was going to rape you that day?
>
> A. Because when I was 11, I was raped at Central State Hospital by a 17-year-old by the name of Ivan. And when Mr. Mann told me after I had told to him to leave the items, the money and the beer and leave, he actually resisted and told me that he wanted what he came there for. And it brought up feelings that I hadn't had since I was 11 and I was afraid. Moreover on that, when he put his hands on me, that's when I — we had a physical altercation. And, yes, that's when I lost it.

Although Riggs' argument in his brief consists of little more than a single page and is not particularly clear, it appears that he is contending that his claim at the motion for new trial hearing regarding his "subjective fear of rape" was relevant to the jury's consideration of voluntary manslaughter, and also that the testimony was admissible to rehabilitate his credibility after cross-examination. Neither contention constitutes reversible error.

"[T]he trial court's rulings on the exclusion or admission of evidence are reviewed for a clear abuse of discretion. [Cit.]" *Davis v. State*, 301 Ga. 397, 399 (2) (801 SE2d 897) (2017).

A person commits the offense of voluntary manslaughter

when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . .

OCGA § 16-5-2 (a). "The provocation required to mitigate malice is that which would arouse a heat of passion in a reasonable person; whether the provocation was sufficient to provoke deadly passion in the particular defendant is irrelevant." (Citation and punctuation omitted.) *Prothro v. State*, 302 Ga. 769, 773 (809 SE2d 787) (2018). See also *Lewandowski v. State*, 267 Ga. 831, 832 (2) (483 SE2d 582) (1997) ("[W]hen the evidence raises the offense of voluntary manslaughter, the question is whether the defendant acted out of passion resulting from provocation sufficient to excite such passion in a reasonable person. It is of no moment whether the provocation was sufficient to excite the deadly passion in the particular defendant. [Cits.]"). As this Court has explained, "The reasonable person remains our barometer." *Bailey v. State*, 301 Ga. 476, 480 (IV) (801 SE2d 813) (2017).

Here, the jury heard Riggs' testimony on cross-examination

8

that he feared both for his life and that he was about to be raped. The question is not whether Riggs was entitled to a jury instruction on voluntary manslaughter; the trial court instructed the jury on the definition of voluntary manslaughter. The evidence at trial, including Riggs' own testimony, established overwhelmingly and without dispute that Riggs lured Mann to his house in order to rob him by telling Mann that the two of them were going to have sex. Riggs made no formal proffer at trial regarding why being raped "would be a fear of [his]," but it was clear from the sidebar discussion that he would have testified to "an incident that happened to him when he was a child" if allowed to answer his counsel's question on redirect. But that answer concerned an alleged incident occurring many years earlier and was simply not relevant to the jury's determination regarding voluntary manslaughter. See *Collins v. State*, 306 Ga. 464, 468 (2) (831 SE2d 765) (2019) (alleged sexual abuse of appellant by victim years earlier not relevant to claim of voluntary manslaughter). Nor was the testimony relevant to support a claim of justification or self-defense, both because Riggs

9

does not contend that *the victim* sexually abused him as a child, see OCGA § 16-3-21 (d) (1), and because during the charge conference, Riggs, through his counsel, withdrew his requested charges on justification and self-defense.[2] Similarly, in the absence of an insanity defense, which Riggs' counsel also withdrew from consideration by the jury, Riggs cannot demonstrate that this evidence was relevant to show his alleged subjective mental state. See generally *Collins*, 306 Ga. at 468 (2); *Virger v. State*, 305 Ga. 281, 302-303 (9) (c) (824 SE2d 346) (2019).[3]

---

[2] OCGA § 16-3-21 provides in subsection (d):

In a prosecution for murder or manslaughter, if a defendant raises as a defense a justification provided by subsection (a) of this Code section, the defendant, in order to establish the defendant's reasonable belief that the use of force or deadly force was immediately necessary, may be permitted to offer:

(1) Relevant evidence that the defendant had been the victim of acts of family violence or child abuse committed by the deceased, as such acts are described in Code Sections 19-13-1 and 19-15-1, respectively. . . .

[3] Riggs filed a pretrial motion for mental evaluation and was found competent to stand trial. At the competence hearing, the examining forensic psychologist testified that Riggs' "mental health symptoms that he reported as well as intellectual deficits in this report were feigned for the purposes of testing." Riggs then filed a plea of not guilty by reason of insanity. While opening statements were not recorded, defense counsel apparently did not mention the insanity plea in opening, insanity was not raised at trial, and in the charge conference, defense counsel withdrew Riggs' requested jury charges on insanity, as well as his requested jury charges on self-defense.

10

Riggs bases his other claim — that the evidence was relevant to show why he had a "subjective fear" of rape and thus was admissible as rehabilitation — upon *Allison v. State*, 296 Ga. App. 379 (674 SE2d 639) (2009). *Allison*, however, was decided under the old Evidence Code and did not involve rehabilitation of a witness' credibility. See id. at 381. But even if this evidence could be considered for the limited purpose of rehabilitating his credibility in testifying to his fear of rape, any error in refusing to admit it was harmless. As discussed above, the testimony was not relevant to support any claim of voluntary manslaughter, justification and self-defense, or insanity. In light of this very limited purpose and the overwhelming evidence of Riggs' guilt as outlined above, error, if any, was harmless.

3. In his second enumeration of error, Riggs states: "To the extent, if any, that the foregoing error was not properly preserved for review, Mr. Riggs received ineffective assistance of counsel." This section of his brief is headed: "To whatever extent Enumeration One is not adequately preserved, a remand for a hearing on

11

ineffectiveness is required." But Riggs offers no argument or citation of authority in support of this claim, ending his perfunctory half-page argument mid-sentence. When an enumeration of error "is not supported by argument or citation of authority, it is deemed abandoned under the rules of each of the Georgia appellate courts." *Felix v. State*, 271 Ga. 534, 539 n.6 (523 SE2d 1) (1999). See Supreme Court Rule 22. In any event, Riggs' claim that the trial court erred in barring his testimony that he was raped at age 11 was properly preserved, so any contention that counsel was ineffective in failing to preserve it is without merit. Immediately after the trial court ruled, Riggs' counsel said, "Judge, if you could note my objection for the record," and the trial court responded, "All right."

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2019.
Murder. Richmond Superior Court. Before Judge Blanchard.
*Howard W. Anderson III*, for appellant.
*Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant*

*Attorney General*, for appellee.